[Cite as *State v. Smith*, 2019-Ohio-2926.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|                       |   | JUDGES:                        |
|-----------------------|---|--------------------------------|
| STATE OF OHIO         | : | Hon. W. Scott Gwin, P.J.       |
|                       | : | Hon. William B. Hoffman, J.    |
| Plaintiff-Appellee    | : | Hon. Patricia A. Delaney, J.   |
|                       | : |                                |
| -vs-                  | : |                                |
|                       | : | Case No. 18-CA-77              |
| TAMMI S. SMITH        | : |                                |
|                       | : |                                |
| Defendant-Appellant   | : | OPINION                        |

CHARACTER OF PROCEEDING:        Criminal appeal from the Licking County
Municipal Court, Case No.17-TRC-08915

JUDGMENT:        Affirmed

DATE OF JUDGMENT ENTRY:        July 17, 2019

APPEARANCES:

For Plaintiff-Appellee

MARK GARDNER
Utica Prosecutor
18 North 2nd Street, Ste. 201
Newark, OH 43055

For Defendant-Appellant

JEFFERY BLOSSER
765 South High Street
Columbus, OH 43206

*Gwin, P.J.*

{¶1}    Defendant-appellant Tammi S. Smith ["Smith"] appeals her conviction and sentence in the Licking County Municipal Court on one count of OVI "prohibited level" in violation of R.C. 4511.19(A)(1)(h). Plaintiff-appellee is the State of Ohio.

*Facts and Procedural History*

{¶2}    Smith was cited on July 10, 2017 with the offenses of OVI, "Under the Influence", in violation of R.C. 4511.19(A)(1)(a) OVI, "prohibited level" in violation of R.C. 4511.19(A)(1)(h) and Physical control in violation of R.C. 4511.194

{¶3}    Smith filed her first Motion to Suppress on August 29, 2017 and an additional Motion to Suppress was filed on October 20, 2017. After a number of continuances, the oral hearing on the Motions to Suppress was held on January 4, 2018. On March 6, 2018, the Court denied the Motions to Suppress and an Entry was filed on May 15, 2018. A jury trial commenced on July 26, 2018.

{¶4}    Kevin Benson testified that as he headed northbound on State Route 13 and he saw a vehicle tailgating the car in front of it, slam the brakes on causing the car to "nose dive down" and then almost going off the roadway several times. He followed the car to an intersection and noticed the traffic light turn from red to green several times before the car proceeded. Benson approached the car to see if the driver was ok. Benson testified that Smith looked to be asleep, her head was down and her eyes were closed. When he knocked on the driver's side window, the car abruptly turned right onto eastbound U.S. 62 and then a left on Wells Avenue. He saw a police car and stopped to tell the officer to follow the suspect. He then continued to follow the suspect to a residence in Utica and remained on

the scene until the officer arrived, parked, and approached the house.  He did see Smith exit the vehicle and go into the house.

{¶5}   Chief Cameron Dailey[1] of the Utica Police Department testified that on the evening of July 10, 2017, he was at the intersection of Wells Avenue and U.S. 62 facing southbound.  He saw a vehicle travelling approximately 20-25 miles per hour on U.S. 62, and as the vehicle turned onto Wells, Dailey made eye contact with the driver.  He felt that she was slumping in her seat and appeared like a person who had overdosed on heroin.

{¶6}   Chief Dailey further testified that as he started to pull out to get turned around, Benson pulled up quickly and stated that Dailey should stop her, she almost hit a car, and she almost hit a guardrail.  Dailey turned incorrectly at Mill Street and lost sight of the suspect and Benson but was directed to the residence by his dispatcher based on the registered owner's address.  Dailey testified that as he pulled into the driveway Smith was walking towards the residence, toward the front door, and was not maintaining her balance very well.  She stumbled a couple of times as she was going in the door.  He went to the door and made eye contact with Smith.  He "urged" her to come outside and speak with him.  Smith complied.  Smith denied at that time that she had consumed any alcohol but admitted that she had a prescription for muscle relaxers.

{¶7}   Upon approaching Smith, Dailey could smell the odor of an alcoholic beverage.  After speaking with Smith, Dailey asked her to perform field sobriety tests. ["FST"] He was unable to successfully administer the horizontal gaze nystagmus ("HGN") test because of the defendant repeatedly moving her head instead of just her eyes.  He

---

[1] Chief Dailey was a K-9 officer at the time of the incident.  T. at 93.

tried to conduct the walk and turn ("WAT") test, however, Smith stumbled twice, nearly falling to the ground. For safety, Dailey did not perform other field tests.

{¶8} Chief Dailey then placed Smith under arrest for OVI and advised her of her *Miranda* rights. At the police station, Smith had trouble providing her social security number. Chief Dailey read BMV Form 2255 to Smith and she agreed to take the requested BAC Datamaster breath test with a result of .253

{¶9} Jolanda Davila, a friend of Smith, testified that they had made plans to get together after work that evening. Davila was aware Smith had an argument with her husband that day and was upset about it. By the time Davila got home from work, Smith was already there. She stated that the door was shut at first, but then Smith came outside with Davila's dog. After greeting each other, they went back into the house and left the door open. Ms. Davila testified that Smith did not seem intoxicated when she had contact with her at the residence and that she did not see Smith consume any alcohol. Davila testified that she had both wine and liquor in her house that day. She noted that she felt there was less liquid in the liquor bottle when she got home than when she left for work that morning.

{¶10} After the testimony was completed, the Jury found Smith guilty of the two OVI charges. The Physical Control charge was dismissed. The state elected to proceed on the R.C. 4511.19(A)(1)(h), "prohibited level."

*Assignments of Error*

{¶11} Smith raises two assignments of error,

{¶12} "I. THE EVIDENCE PRESENTED AT TRIAL WAS INSUFFICIENT TO SUPPORT A CRIMINAL CONVICTION FOR OVI.

{¶13} "II. THE CONVICTIONS FOR OVI WERE AGAINST THE MANIFEST WEIGHT OF EVIDENCE."

I & II.

{¶14} In her first assignment of error, Smith argues that there was insufficient evidence to convict her of OVI. In her second assignment of error, Hayes contends that the jury's findings are against the manifest weight of the evidence.

**STANDARD OF APPELLATE REVIEW.**

*Sufficiency of the Evidence.*

{¶15} The Sixth Amendment provides, "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker,* 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶16} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus: *Walker,* at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond

a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney,* 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus (emphasis added); *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

## **ISSUE FOR APPEAL**

*A. Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, "if believed, would convince the average mind of the defendant's guilt on each element of the crimes beyond a reasonable doubt."*

{¶17} Smith was convicted of Operating A Motor Vehicle Under the Influence of Alcohol and/or a Drug of Abuse a violation of R.C. 4511.19(A)(1)(h), which states, "(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply…(h) The person has a concentration of seventeen-hundredths of one gram or more by weight of alcohol per two hundred ten liters of the person's breath."

**{¶18}** In prosecutions for "under the influence" pursuant to R.C. 4511.19 (A)(1)(a), "the behavior of the defendant * * * is the crucial issue. However, in *State v. Lucas*, the Supreme Court observed,

> The *per se* offenses define "the point the legislature has determined an individual cannot drive without posing a substantial danger, not only to himself, but to others." *State v. Tanner* (1984), 15 Ohio St.3d 1, 6, 15 OBR 1, 5, 472 N.E.2d 689, 693. In determining whether one of these *per se* offenses was committed by the defendant, the trier of fact is not required to find that the defendant operated a vehicle while under the influence of alcohol or drugs, but only that the defendant operated a vehicle within the state and that the defendant's chemical test reading was at the proscribed level. The critical issue at trial is the accuracy of the test, not the behavior of the accused. See Katz & Sweeney, Ohio's New Drunk Driving Law: A Halfhearted Experiment in Deterrence (1983-1984), 34 Case W.Res.L.Rev. 239, 243.

40 Ohio St.3d 100, 103, 532 N.E.2d 130(1988). Smith has not challenged the accuracy of the BAC test in this appeal. Smith tested a .253 at 7:38 pm on July 10, 2017.

**{¶19}** Kevin Benson and Chief Dailey each testified that he observed Smith driving the car. Each testified that Chief Dailey arrived at the home within minutes of Smith arrival.

**{¶20}** Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Smith had committed the crime of OVI in violation of R.C.

4511.19(A)(1)(h).    We hold, therefore, that the state met its burden of production regarding each element of the crime of OVI and, accordingly, there was sufficient evidence to submit the charge to the jury and to support Smith's conviction.

*Manifest weight of the evidence.*

**{¶21}**  As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient.  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355; *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

> "[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

> "If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶22}**  The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d

904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney*, 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002–Ohio–1152, at ¶ 13, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999). Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer,* 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

**{¶23}** Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

ISSUE FOR APPEAL.

*B. Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.*

{¶24} Smith argues that Jolanda Davila's testimony proves alcohol was most likely consumed at her residence.

{¶25} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig,* 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶26} In the case at bar, the jury heard the witnesses and viewed the evidence. The jury further heard Smith's attorney's arguments and explanations about her actions. The jury further heard Ms. Davila testify that Smith did not seem intoxicated when she had contact with her at the residence and that she did not see Smith consume any alcohol. Chief Dailey testified that Smith denied at Davila residence that she

had consumed any alcohol but admitted that she had a prescription for muscle relaxers. Thus, a rational basis exists in the record for the jury's decision.

{¶27} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find Smith's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of Smith's guilt. The jury neither lost his way nor created a miscarriage of justice in convicting Smith of OVI.

{¶28} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime for which Smith was convicted.

{¶29} Smith's First and Second Assignments of Error are overruled.

{¶30}  The judgment of the Licking County Municipal Court is affirmed.


By Gwin, P.J.,

Hoffman, J., and

Delaney, J., concur