[Cite as *State v. Comer*, 2018-Ohio-2264.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY


STATE OF OHIO,                           :

    Plaintiff-Appellee,              :        CASE NO. CA2017-09-135

                                     :        O P I N I O N
- vs -                                            6/11/2018

                                     :

DANNY L. COMER,                          :

    Defendant-Appellant.             :


CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 17CR32647


David P. Fornshell, Warren County Prosecuting Attorney, Kathryn M. Horvath, 520 Justice Drive, Lebanon, Ohio 45036, for plaintiff-appellee

Bryan Scott Hicks, P.O. Box 359, Lebanon, Ohio 45036, for defendant-appellant


**HENDRICKSON, J.**

{¶ 1} Defendant-appellant, Danny L. Comer, appeals from his convictions in the Warren County Court of Common Pleas for operating a vehicle while under the influence (OVI) of a drug of abuse. For the reasons set forth below, we affirm appellant's convictions.

{¶ 2} At approximately 5:00 p.m. on December 27, 2016, Amy Hollandsworth was driving south on U.S. Route 42 towards Lebanon, Ohio. As she approached an intersection, a vehicle driven by appellant pulled out in front of her. Hollandsworth slammed on her brakes

to avoid a collision. Hollandsworth followed behind appellant's vehicle, and she noticed that appellant was swerving back and forth on the road. Hollandsworth observed that appellant's driving caused multiple vehicles traveling in the opposite direction to pull off the road to avoid an accident. Hollandsworth honked her vehicle's horn at appellant several times, but he did not respond. Hollandsworth believed appellant was a danger to other cars on the road and she called the police to report his driving. She provided a description of the vehicle and noted that the vehicle had pulled into the A1 Carryout in Lebanon.

{¶ 3} Sergeant Matthew Weithofer of the Lebanon Police Department was on patrol near the A1 Carryout when he received a dispatch about a possible intoxicated driver. He saw the vehicle matching Hollandsworth's description pull out of the carryout and travel southbound on U.S. 42. Weithofer followed the vehicle for about a mile and observed that it was traveling in a weaving course, moving back and forth within the lane. He also observed the vehicle make an abrupt left turn into a bank parking lot without using a turn signal. Weithofer followed the vehicle into the parking lot and initiated a traffic stop.

{¶ 4} Weithofer approached appellant's vehicle and was advised by appellant that his driver's license was suspended. Appellant informed Weithofer that he lived in Miamisburg, Ohio but was traveling from work in Vandalia, Ohio to a home near a Dodge dealership to take a shower. Weithofer noticed that appellant's eyelids were droopy, he was slurring his speech, and he was speaking with abnormal pauses. Weithofer did not notice the odor of an alcoholic beverage. Appellant advised Weithofer that he was taking Neurontin. Based on his training and experience, Weithofer knew Neurontin was a central nervous system depressant that can cause symptoms and behavior that mimics alcohol intoxication, including sluggish or slow movements, slurred speech, and disorientation.

{¶ 5} After observing that appellant displayed signs associated with the effects of Neurontin, Weithofer asked appellant to exit the vehicle so that a field sobriety test could be

- 2 -

administered. Appellant refused to take the field sobriety test, and when asked how much Neurontin he had taken, responded that he "didn't want to go to jail."

{¶ 6} Appellant was placed under arrest and his vehicle searched by Officer Steven Morris. Morris found six Neurontin in a prescription pill bottle that had the label ripped off. Appellant did not produce a prescription for the Neurontin.

{¶ 7} Appellant was transported to the Lebanon police station. While en route to the station, he engaged in cordial conversation, but his speech remained slurred. At the station, appellant was read the BMV 2255 form, informing him of the consequences of refusing a chemical test. When he was asked to submit to a urine test, appellant questioned what drugs the test would screen for, specifically inquiring if it would screen for marijuana. Appellant ultimately ended up refusing to take the chemical test.

{¶ 8} At the police station, Weithofer looked over appellant's driving record and noticed that the December 27, 2016 OVI charge would be appellant's sixth OVI charge in 20 years. Weithofer advised appellant that the charge would be for a felony OVI, rather than a misdemeanor OVI. After being informed of the felony charge, appellant's behavior and demeanor rapidly changed. He became agitated and upset, started yelling about going back to prison, and refused orders to remain seated. Due to his erratic behavior, appellant was placed in handcuffs before being escorted to Weithofer's vehicle so that he could be transported to jail.

{¶ 9} While being transported to jail, appellant became verbally abusive towards Weithofer, calling him names and using foul language. When being booked into jail, appellant made a threat towards Weithofer's children, stating Weithofer "better hope [appellant] never catches [Weithofer's] kid's out."

{¶ 10} On January 23, 2017, appellant was indicted on one count of OVI in violation of R.C. 4511.19(A)(1)(a) (count one) and one count of OVI in violation of R.C.

4511.19(A)(2)(a)-(b) (count two), both felonies of the fourth degree. Both counts were accompanied by a specification charging appellant with having committed five or more equivalent offenses within the last 20 years in violation of R.C. 2941.1413(A).

{¶ 11} Appellant entered a not guilty plea to the charges, and a jury trial commenced on June 29, 2017. The defense stipulated appellant had five or more prior OVI convictions within the last 20 years. The state then called as witnesses Hollandsworth, Weithofer, Morris, and Officer Travis O'Neil, who testified to the events related above. The state also presented testimony from Sherri Zapadka, a pharmacist and compliance specialist employed by the Ohio State Board of Pharmacy. Zapadka was qualified as an expert in the area of prescription medication, and she testified about the prescription drug Neurontin (generic name gabapentin) and the side effects of said drug. Zapadka explained the drug is a central nervous system depressant that is used to treat seizure disorders, nerve pain associated with the shingles virus, post-surgical nerve pain, diabetic neuropathy, and certain social phobias. Twenty-eight percent of the people taking the drug experience dizziness as a side effect and 21 percent also experience drowsiness or sleepiness. Other side effects from the drug include fatigue, trouble controlling body movements, eye nystagmus, and dramatic emotional mood changes. Zapadka explained the side effects of dizziness and drowsiness are "very high" and that approximately seven to 16 percent of patients prescribed the drug stop taking it because they cannot handle the dizziness and drowsiness. She stated that the side effects of the drug mimic some of the side effects of alcohol intoxication, such as droopiness of the eyes as well as slurring or trouble pronouncing words when speaking. Zapadka explained that it is possible to take Neurontin as prescribed yet still have signs of impairment such that one should not drive or operate heavy machinery, and that an individual who has been sleep deprived would see an increase in drowsiness and fatigue. Finally, Zapadka testified that Neurontin is a drug that is abused and that some people take the drug to get "psychedelic

euphoric symptoms."

{¶ 12} On behalf of his defense, appellant called his former employer as a witness.[1] Appellant's former employer testified that appellant worked "on and off" for his construction company for several years. At the time of appellant's arrest, appellant had been working overnight hours at a job site in Vandalia to keep portable heaters running to avoid pipes from freezing. According to the employer, appellant usually worked eight-to-ten hour shifts overnight. The evening before his arrest, appellant had been working. However, the employer was unsure how long appellant had worked or when he finished his shift. The employer knew that appellant had left the job site for a while, before returning on December 27, 2016 around 9:00 a.m. or 10:00 a.m. Appellant worked until around 4:00 p.m. or 5:00 p.m. that day. According to the employer, appellant looked sleep deprived on December 27, 2016, and the employer had observed appellant nodding off a few times that day.

{¶ 13} The employer also testified that he knew appellant took Neurontin, but he had not seen a prescription for the drug. He also did not know how much Neurontin appellant had been taking or whether appellant was taking the prescribed amount. The employer therefore admitted on cross-examination that he could not say for certain that appellant's drowsiness and sleepiness on December 27, 2016 was caused by sleep deprivation, rather than appellant's ingestion of Neurontin.

{¶ 14} After considering the foregoing testimony, the jury found appellant guilty of both OVI charges and their accompanying specifications. The offenses were merged for sentencing, with the state electing to proceed on count two. Appellant was sentenced to 24 months in prison on count two, to run consecutively to the two-year mandatory prison term imposed on the specification, for a total of a four-year prison term. The court imposed a

---

1. Appellant also called his girlfriend as a witness. However, once called to the stand, appellant's girlfriend invoked her Fifth Amendment right against self-incrimination.

$1,350 fine and suspended appellant's license for 15 years.

{¶ 15} Appellant appealed his conviction, raising the following as his sole assignment of error:

{¶ 16} THE VERDICT WAS AGAINST THE SUFFICIENCY OF THE EVIDENCE AS WELL AS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 17} Appellant argues his OVI convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. He contends that the state failed to prove beyond a reasonable doubt that it was his use of Neurontin, and not merely fatigue, that led to his impaired driving. He further argues "the jury lost its way as they had no evidence of how much or when Neurontin had been taken."

{¶ 18} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 194 Ohio App.3d 755, 2011-Ohio-3018, ¶ 10 (12th Dist.). When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 12th Dist. Fayette No. CA2011-10-026, 2012-Ohio-3205, ¶ 9. Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 19} On the other hand, a manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 12th Dist. Butler No. CA2011-09-177, 2012-Ohio-2372, ¶ 14. To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all

- 6 -

reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 12th Dist. Warren No. CA2008-07-095, 2009-Ohio-2814, ¶ 66. In reviewing the evidence, an appellate court must be mindful that the jury, as the original trier of fact, was in the best position to judge the credibility of witnesses and determine the weight to be given to the evidence. *State v. Blankenburg*, 197 Ohio App.3d 201, 2012-Ohio-1289, ¶ 114 (12th Dist.). Therefore, an appellate court will overturn a conviction due to the manifest weight of the evidence "only in the exceptional case in which the evidence weighs heavily against the conviction." *Id.*, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997).

**{¶ 20}** Further, although the legal concepts of sufficiency of the evidence and weight of the evidence are quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 12th Dist. Butler No. CA2012-03-049, 2013-Ohio-150, ¶ 19.

**{¶ 21}** Appellant was found guilty of OVI in violation of R.C. 4511.19(A)(1)(a), which provides that "[n]o person shall operate any vehicle * * * within this state, if, at the time of operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or combination of them." Appellant was also found guilty of OVI in violation of R.C. 4511.19(A)(2)(a)-(b), which prohibits an individual with an OVI conviction within 20 years of the charged offense from operating a vehicle "while under the influence of alcohol, a drug of abuse, or combination of them" and, after an OVI arrest, also prohibits the individual from refusing to submit to chemical tests.[2] He was further found guilty of the accompanying R.C.

---

2. Both OVI offenses were felonies of the fourth degree, as appellant had previously been convicted or pled guilty to five or more instances of OVI within 20 years of the instant offenses. *See* R.C. 4511.19(G)(1)(d).

2941.1413(A) specifications, which require a court to impose a mandatory prison term of one to five years on a defendant if the defendant has been convicted of five or more OVI offenses within the last 20 years.

{¶ 22}  "The definition of 'drug of abuse' is imported from R.C. 4506.01." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, ¶ 14, citing R.C. 4511.18(E).  The term "drug of abuse" means "any controlled substance, dangerous drug as defined in section 4729.01 of the Revised Code, or over-the-counter medication that, when taken in quantities exceeding the recommended dosage, can result in impairment of the judgment or reflexes." R.C. 4506.01(M).  R.C. 4729.01(F)(1), in turn, defines "dangerous drug" to mean, among other things, a drug that "may be dispensed only upon a prescription."  As Neurontin is a drug that is available only with a prescription, and the drug's use could impair judgment or reflexes, it is both a dangerous drug and "drug of abuse."  The issue then becomes whether the greater amount of credible evidence offered at trial demonstrated appellant ingested Neurontin and that it impaired his driving.

{¶ 23}  After reviewing the record, weighing inferences and examining the credibility of the witnesses, we find that appellant's convictions for OVI under R.C. 4511.19(A)(1)(a) and (A)(2)(a)-(b) are supported by sufficient evidence and are not against the weight of the evidence.  The state presented testimony and evidence from which the jury could have found all the essential elements of the OVI offenses proven beyond a reasonable doubt.  Contrary to appellant's assertions, the state was not required to prove how much or when appellant ingested the Neurontin.  The state only had to prove that appellant ingested a drug of abuse, that he operated his vehicle while impaired, and, with respect to count two, that he refused a chemical test after being arrested for OVI.

{¶ 24}  Here, the state presented evidence that appellant operated his vehicle while under the influence of a drug of abuse.  Both Hollandsworth and Weithofer observed

appellant drive his vehicle in a weaving manner. Hollandsworth testified appellant was driving dangerously and noted that she and other vehicles on the road had to either slam on their brakes or pull off the side of the road to avoid a collision with appellant's vehicle.

{¶ 25} Weithofer, an officer with more than 11 years of experience who has been trained in standardized field sobriety testing and advanced roadside impaired driving enforcement and has been certified as a drug recognition expert, testified that appellant not only had an unlabeled prescription pill bottle containing Neurontin in his vehicle, but appellant also admitted to taking the drug and appeared to be under the influence of the drug. Weithofer observed that appellant's eyelids were droopy, he was slurring his speech, speaking with abnormal pauses, and had an erratic mood swing and change in behavior. Zapadka and Weithofer both testified that these behaviors were side effects commonly experienced by individuals who take the central-nervous-system depressant drug. Weithofer further testified that after appellant was arrested, he refused to take a urine test so that the presence and level of drugs in his system could be determined.

{¶ 26} Appellant argues that the weight of the evidence presented at trial demonstrates he was operating the vehicle while sleep deprived and that fatigue, not Neurontin, was to blame for his impaired driving, his drowsiness, and his abnormal speech. He contends that because drowsiness is a side effect that only 21 percent of people experience from taking Neurontin, it is more likely that his drowsiness and fatigue was brought on by the fact that he worked himself into exhaustion.

{¶ 27} Although the jury heard testimony that appellant had been working overnight hours and appeared to his employer to be fatigued, the jury was entitled to find that appellant's impairment was caused by his use of Neurontin. Zapadka explained that an individual who has been sleep deprived would see an increase in drowsiness and fatigue when taking Neurontin. The jury was free to believe and rely on this testimony in convicting

appellant. *See State v. Woodard*, 12th Dist. Warren No. CA2016-09-084, 2017-Ohio-6941, ¶ 24 ("The jury, as the trier of fact, was free to believe all, part, or none of the testimony of each witness who appear[ed] before it"). Appellant's OVI convictions are not against the manifest weight of the evidence merely because the jury chose to believe the prosecution testimony. *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17.

{¶ 28} Accordingly, having thoroughly reviewed the record in the present case, we find that the jury did not lose its way and create such a manifest miscarriage of justice such that appellant's OVI convictions must be reversed and a new trial ordered. Appellant's convictions are not against the manifest weight of the evidence and are, therefore, necessarily supported by sufficient evidence. *See Jones*, 2013-Ohio-150 at ¶ 19.

{¶ 29} Appellant's sole assignment of error is overruled.

{¶ 30} Judgment affirmed.

S. POWELL, P.J., and M. POWELL, J., concur.