[Cite as *State v. Bowden*, 2020-Ohio-4556.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

STATE OF OHIO,                    :          APPEAL NO. C-190396
                                             TRIAL NO. C-18TRC-25915A
    Plaintiff-Appellee,          :

    vs.                          :          *OPINION.*

JONATHAN BOWDEN,                  :

    Defendant-Appellant          :


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: September 23, 2020


*Joseph T. Deters* and *Adam Tieger,* Hamilton County Prosecuting Attorneys, for Plaintiff-Appellee,

*Michael J. Trapp* for Defendant-Appellant.

**BERGERON, Judge.**

{¶1} Midway through an OVI checkpoint, a driver throws his car into reverse and begins to back away. Needless to say, this behavior attracts the attention of the state trooper monitoring the checkpoint, who eventually flags down the errant driver. Based on evidence of drug impairment, the driver is arrested and later convicted of a misdemeanor OVI. On appeal, defendant-appellant Jonathan Bowden challenges the sufficiency of the evidence supporting his OVI conviction, asserting that the state failed to prove a nexus between his ingestion of a drug of abuse and his impaired driving. Because we find that the evidence—reviewed in the light most favorable to the state—sufficed to support his conviction, we overrule Mr. Bowden's sufficiency challenge and affirm the trial court's judgment.

I.

{¶2} Stationed at an OVI checkpoint, Trooper Zachary Sauber observed Mr. Bowden's car pull halfway into the checkpoint, reverse, and begin backing up. Flagging the car down, Trooper Sauber instructed Mr. Bowden to park, but he continued to operate the vehicle until Trooper Sauber managed to pry open the door. With Mr. Bowden finally parked and the vehicle's door ajar, Trooper Sauber observed a cloud of smoke (recognizable as marijuana) billowing from inside the car.

{¶3} Trooper Sauber accordingly asked Mr. Bowden to perform a battery of field sobriety tests, starting with the lack of convergence test—which is designed to gauge how well a driver can follow a pen with his eyes. According to Trooper Sauber, this test is used "more commonly when you suspect drug impaired drivers," and a failure of the subject's eyes to cross while following the pen suggests impairment. Mr. Bowden's eyes did not cross.

{¶4}  Next, Trooper Sauber turned to the modified Romberg test, also commonly used when an officer suspects drug impairment.  For this test, Trooper Sauber asked Mr. Bowden to close his eyes, tilt his head back, and count to thirty seconds.  Mr. Bowden tilted his head back for just five seconds, and this faulty perception of time militated in favor of impairment.

{¶5}  Finally, Trooper Sauber conducted the walk-and-turn test and the one-leg-stand test.  During the walk-and-turn, Trooper Sauber observed six of the eight clues of impairment, with Mr. Bowden demonstrating difficulties balancing and an inability to follow instructions.  On the one-leg-stand test, Mr. Bowden exhibited four out of the four signs of impairment, including hopping, swaying, raising his arms, and placing his foot down.

{¶6}  Wrapping up these tests, Trooper Sauber asked Mr. Bowden once more whether he had ingested any drugs or marijuana.  At this point, Mr. Bowden admitted that he had taken four painkillers (later clarified to be prescription Tylenol) when he should have taken only two.  Trooper Sauber also recounted Mr. Bowden acknowledging "that he did feel like he was too impaired to be driving."  After this concession, Trooper Sauber arrested Mr. Bowden and requested that he provide a urine test, but Mr. Bowden demurred.

{¶7}  Both at the checkpoint and later at trial, Mr. Bowden denied smoking marijuana on the night of his arrest, insisting that only the passenger of the car had inhaled that evening.  Trooper Sauber, on the other hand, testified that the passenger—when interviewed at the checkpoint—maintained that both parties had smoked.  Mr. Bowden also testified that he had sustained a concussion prior to the incident, which explained the prescription Tylenol earlier in the day.  And he disputed that he had ever suggested that he was "too impaired to be driving."

{¶8}    After hearing all of this evidence, the trial court ultimately found Mr. Bowden guilty of a misdemeanor OVI under R.C. 4511.19(A)(1)(a) and driving with a suspended license under R.C. 4510.11, sentencing him to 365 days incarceration with 330 days suspended and credit for time served.  Mr. Bowden now appeals, raising a single assignment of error.

II.

{¶9}    In his sole assignment of error, Mr. Bowden challenges the sufficiency of the evidence supporting his OVI conviction, contending that the state failed to provide sufficient evidence of his impairment.  Specifically, Mr. Bowden disputes the existence of any nexus linking the ingestion of marijuana or painkillers to his impairment, which, in his view, dictates reversal.

{¶10}   When reviewing a sufficiency of the evidence challenge, we inquire " 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell,* 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  The sufficiency of evidence to sustain a verdict presents a question of law.  *State v. Thompkins,* 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  We therefore review a sufficiency of the evidence challenge de novo, construing the evidence in a light most favorable to the prevailing party.  *State v. Jackson,* 1st Dist. Hamilton Nos. C-180159 and C-180209, 2020-Ohio-80, ¶ 11 ("we review de novo the court's legal conclusion that the state presented sufficient evidence * ").

{¶11}  Mr. Bowden was convicted of a misdemeanor OVI under R.C. 4511.19(A)(1)(a), which forbids an individual from operating any vehicle while

"under the influence of alcohol, a drug of abuse, or a combination of them." *See State v. Comer,* 12th Dist. Warren No. CA2017-09-135, 2018-Ohio-2264, ¶ 23 ("The state only had to prove that appellant ingested a drug of abuse, that he operated his vehicle while impaired[.]"). Mr. Bowden does not contest that marijuana or painkillers qualify as drugs of abuse. *See* R.C. 4511.181(E) and R.C. 4506.01(M). Accordingly, the state simply needed to prove that Mr. Bowden ingested the marijuana or painkillers and that either substance impaired his subsequent driving. *See State v. Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 14 ("So if the evidence, viewed in the light most favorable to the state, proved that [the defendant] had ingested hydrocodone and that it impaired his driving, it was sufficient to support his OVI conviction.").

{¶12} And the state did so here. As to ingestion, Trooper Sauber testified at trial that when he opened Mr. Bowden's car door, "marijuana smoke just began rolling out of the vehicle heavily." Trooper Sauber noted that he recognized the "odor of burnt marijuana" from his training, and further that he witnessed "ashes all over the console area." The passenger's acknowledgment that both of them were partaking further confirmed Trooper Sauber's suspicions. The billowing smoke, the distinctive smell, the ashes, and the passenger's comments—all viewed in the light most favorable to the state—are sufficient to convince a rational trier of fact that Mr. Bowden ingested marijuana.

{¶13} The state also presented sufficient evidence of Mr. Bowden's impairment. Mr. Bowden's efforts to evade the OVI checkpoint certainly raised red flags. When Trooper Sauber approached the car and demanded that Mr. Bowden put it in park, Mr. Bowden ignored the instructions, finally parking the car only after Trooper Sauber opened the door. *See Richardson* at ¶ 18 (citing defendant's poor

driving as evidence of impairment). And, across all of the tests performed by Trooper Sauber, Mr. Bowden demonstrated multiple signs of impairment. *See id.* (citing defendant's poor performance on the walk-and-turn and one-leg-stand tests as evidence of impairment by narcotics). Mr. Bowden's refusal to take a urine test weighs further against him. *See State v. Cauthon,* 5th Dist. Fairfield No. 18-CA-41, 2019-Ohio-1809, ¶ 19 (finding sufficient evidence supported defendant's OVI conviction, in part, because defendant "refused a drug test"). Finally, Trooper Sauber testified that Mr. Bowden admitted that "he did feel like he was too impaired to be driving." This combined evidence, if believed, was more than sufficient to establish Mr. Bowden's impairment.

{¶14} Without much to say about this evidence, Mr. Bowden rests his case on a purported lack of evidence *linking* his ingestion to his impairment. He correctly notes that, to convict an individual under R.C. 4511.19, the state must present evidence that a driver's "impaired condition *resulted from* being under the influence of a drug of abuse." (Emphasis added). *State v. Collins*, 9th Dist. Wayne No. 11CA0027, 2012-Ohio.2236, ¶ 20. In this respect, he zeros in on the absence of any witness to testify regarding the effects of taking painkillers or prescription Tylenol. *See State v. May,* 2d Dist. Montgomery No. 25359, 2014-Ohio-1542, ¶ 47 ("[I]n many situations, especially those involving prescription drugs, [impairment] can only be proved by direct testimony linking the influence of the drug to the driving.").

{¶15} But the painkillers are not the only drug of abuse on which Mr. Bowden's conviction turns. So long as the state presented sufficient evidence of Mr. Bowden's ingestion of and impairment by marijuana, any error in the court's reliance upon painkillers would be harmless (assuming, without deciding, the correctness of Mr. Bowden's argument). *See id.* at ¶ 54 (where the state presented "overwhelming

evidence that [the defendant] was driving her vehicle while under the influence of alcohol," erroneous instruction on the prescription drug Cymbalta constituted harmless error).

{¶16} The evidence in this case—when read in the light most favorable to the state—is sufficient to show a nexus between Mr. Bowden's ingestion of marijuana and his impaired driving. While Trooper Sauber never testified that Mr. Bowden's impairment definitively stemmed from marijuana, our case law does not demand as much. *See Richardson,* 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 18 (finding the officer's testimony sufficient to support that defendant's ingestion of hydrocodone impaired his driving when "[b]ased on his experience, the officer believed that [the defendant] 'was under the influence of some type of possibly narcotics' "). Based on Mr. Bowden's driving and his performance on and behavior during the field sobriety tests, Trooper Sauber testified that Mr. Bowden was "appreciably impaired" in a manner consistent with marijuana consumption. Along with the strong circumstantial evidence of marijuana ingestion chronicled above, this testimony supplies the necessary nexus. *See State v. McClain,* 2018-Ohio-538, 105 N.E.3d 762, ¶ 9 (9th Dist.) (relying on the officer's testimony that the defendant's "behavior during the field sobriety tests and his performance on them," and his "glassy eyes and dilated pupils" sufficiently "indicated that [he] was under the influence of drugs," though the officer never testified as to whether Adderall or marijuana caused defendant's impairment).

{¶17} In light of the above analysis, we overrule Mr. Bowden's sole assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**MYERS, P.J.,** and **CROUSE, J.,** concur.

Please note:
The court has recorded its own entry this date.