**[Cite as *State v. Acklin*, 2024-Ohio-1762.]**

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | APPEAL NOS. | C-230396 |
| | | | C-230397 |
| Plaintiff-Appellee, | : | TRIAL NOS. | 21CRB-14288 |
| | | | 21TRC-18577A |
| vs. | : | | |
| | | | |
| BRIAN ACKLIN, | : | *O P I N I O N.* | |
| | | | |
| Defendant-Appellant. | : | | |

Criminal Appeals From: Hamilton County Municipal Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: May 8, 2024

*Emily Smart Woerner*, City Solicitor, *William T. Horsley*, Chief Prosecuting Attorney, and *Phoebe E. Cates*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Milton and Charlotte Kramer Law Clinic, Case Western Reserve University School of Law*, *Andrew S. Pollis*, Supervising Attorney, *Hunter Cyran* and *Addie Griffey*, Legal Interns, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1}   In these consolidated criminal appeals, defendant-appellant Brian Acklin appeals his convictions for operating a vehicle while under the influence of alcohol ("OVI") and possession of drug paraphernalia.  Acklin raises two assignments of error.  First, Acklin argues that his conviction for OVI was against the manifest weight of the evidence.  Second, Acklin argues that the trial court erred in denying his motion to suppress various pieces of evidence against him.  For the reasons that follow, we overrule the assignments of error and affirm Acklin's convictions.

## Facts and Procedure

{¶2}   Around 11:00 p.m. on Wednesday, August 11, 2021, Brian Acklin was driving with his brother through the Over-the-Rhine area of Cincinnati.  Earlier that night, Cincinnati Police Officers Bailey and Owens-Jordan had responded to a nearby shooting involving a gold sedan.  Officers Bailey and Owens-Jordan observed Acklin driving a gold sedan at a high rate of speed and then make a sudden stop next to the sidewalk, audibly squealing the car's tires.  Acklin's brother then exited the car from the front passenger seat and walked away down the sidewalk.  The officers pulled up behind Acklin's stopped car and he stepped out of his car and met the two officers.

{¶3}   The encounter was recorded on Officer Bailey's body-worn camera. Officer Owens-Jordan began talking with Acklin and asked him to provide his identification.  He fumbled to retrieve a collection of cards from his second pair of pants. He showed the entire collection to Officer Owens-Jordan, fanning through each card, but dropping one.  Acklin passed by a New York driver's license first, which Officer Owens-Jordan had to call to Acklin's attention.  Acklin wanted to find his Ohio driver's license and continued fanning through his cards until he found it.  With

Acklin's Ohio license in hand, Officer Owens-Jordan returned to the police cruiser. As she left, Acklin attempted to hand her another card, which she declined.

{¶4} While Officer Owens-Jordan returned to the police cruiser, Officer Bailey ordered Acklin to lean on the trunk of his car. Acklin offered his collection of cards to Officer Bailey, who declined and repeated his command. Acklin explained to Officer Bailey that he stopped so quickly because his brother demanded he stop right there and let him out. Acklin then admitted his license was suspended for failure to pay child support. Officer Bailey returned to the police cruiser to confirm with Officer Owens-Jordan that they would issue Acklin a ticket for driving with a suspended license.

{¶5} Officer Bailey then walked around Acklin's car, starting from the rear passenger-side door and proceeding counterclockwise looking through each window. After completing a loop around the car, Officer Bailey asked Acklin for permission to search the car, which he gave. Officer Bailey then handcuffed Acklin and told another officer out of the frame of the body-worn camera that he saw a bullet on the front seat. Acklin argued with Officer Bailey and demanded to observe the search, which Officer Bailey denied. Instead, Officer Bailey searched Acklin's person and found a pipe in his outer pants pocket and placed Acklin in the rear of the police cruiser.

{¶6} At 11:12 p.m., about five minutes after Officer Bailey put Acklin in the police cruiser, Officer Bailey opened the door and talked with Acklin. He told Acklin that he could smell the odor of an alcoholic beverage on Acklin. Acklin denied it and demanded multiple times the officers perform sobriety tests. Officer Bailey then read Acklin his *Miranda* rights. Acklin stated he did not understand them, so Officer Bailey closed the police cruiser's door and returned to Acklin's car. Officer Bailey's body-

worn camera recorded that other officers had opened the door to Acklin's car by this point and they can be seen looking inside.

{¶7} At 11:45 p.m., about 30 minutes after Officer Bailey returned to Acklin's car, Officer Bailey searched Acklin's car himself. He opened the rear driver's side door and retrieved from the assorted ephemera sitting on the back seat an empty bottle of Wild Irish Rose branded wine. Officer Bailey then opened the driver's side front door and retrieved a single bullet from the driver's seat. Officer Bailey explained to another officer out of the frame of the recording that he was looking to see if any ammunition found lined up with the number of gunshots at the earlier reported shooting.

{¶8} At 12:15 a.m. on August 12, Acklin was brought to the police station. At 12:33 a.m., Officers Bailey and Owens-Jordan offered Acklin a chemical-sobriety test from the police station's intoxilyzer machine, but Acklin refused to provide a breath sample. He refused after the intoxilyzer was started, so it generated a blank report that Officer Bailey notated was a refused test.

{¶9} Acklin was charged with operating a motor vehicle while under the influence, driving with a suspended driver's license, and possession of drug paraphernalia. Acklin was also charged with two firearms-related felonies. The misdemeanor charges were placed on the municipal court's suspended docket while the felony charges were pending in the court of common pleas. Ultimately, the firearms charges would be dismissed, but about two years would pass from the date of the arrest to the date of Acklin's eventual trial in municipal court.

{¶10} On February 13, 2023, Acklin filed a motion to suppress statements and physical evidence against him. The trial court held a hearing on the motion. There, Acklin's trial counsel limited the issues before the court to whether the

4

detention of Acklin was illegally prolonged after the officers discovered he had a suspended driver's license. Both Officer Bailey and Officer Ownes-Jordan testified and their body-worn camera footage was admitted into evidence. At the close of the hearing, the trial court orally denied the motion.

{¶11} The matter proceeded to a bench trial on June 13, 2023, about 22 months after the date of Acklin's arrest. Acklin pled no contest to the charge of driving with a suspended driver's license and not guilty to the charges of OVI and possession of drug paraphernalia. Again, both Officer Bailey and Officer Owens-Jordan testified and the court admitted the officers' body-worn camera footage. The court also admitted the results of Acklin's refused chemical test, the pipe seized from Acklin's person, and a laboratory report identifying the substances found in the pipe as marijuana.

{¶12} The court found Acklin guilty of all three charges. The court sentenced Acklin to 180 days in jail with 145 days suspended and credit for 15 days' time served and ordered Acklin to serve the remaining 20 days in a community-alternative-sentencing program. The court additionally suspended Acklin's driver's license for one year and ordered him to pay a $375 fine.

{¶13} Acklin now appeals his convictions for OVI and possession of drug paraphernalia. He does not appeal his conviction for driving with a suspended driver's license.

### Law and Analysis

{¶14} Acklin raises two assignments of error. First, Acklin argues that his conviction for OVI was against the manifest weight of the evidence. Second, Acklin argues that the trial court erred in denying his motion to suppress evidence against

him. Because Acklin's argument that the trial court should have suppressed evidence against him implicates the weight of the available evidence supporting his conviction, we address Acklin's arguments in reverse order.

### I. Denial of the motion to suppress.

{¶15} In his second assignment of error, Acklin argues that the trial court erred when it denied his motion to suppress. Acklin's motion to suppress originally sought suppression of statements made by Acklin and various pieces of evidence found in different searches of Acklin's car and his person. Acklin contends his motion to suppress should have been granted because the police officers lacked probable cause to arrest Acklin. Though he raised this argument in his motion, Acklin later abandoned the argument at the suppression hearing, which bars this court from considering his argument on appeal.

{¶16} "To suppress evidence obtained pursuant to a warrantless search or seizure, the defendant must (1) demonstrate the lack of a warrant, and (2) raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 524 N.E.2d 889 (1988), paragraph one of the syllabus. The notice requirement requires a defendant seeking suppression to articulate "the specific legal and factual grounds upon which the validity of the search and seizure is challenged." *Id*. at 219. Where a party abandons an issue by not addressing it before the trial court, the party invites any error from the trial court not addressing that issue. *See State v. Ulmer*, 1st Dist. Hamilton Nos. C-190304, C-190305 and C-190306, 2020-Ohio-4689, ¶ 15. Because the party that abandoned the issue invited the trial court's error, a party cannot revive his or her abandoned argument on appeal. *See id*.,

citing *State ex rel. Kline v. Carroll*, 96 Ohio St.3d 404, 2002-Ohio-4849, 775 N.E.2d 517, ¶ 27 (discussing the doctrine of invited error), and *State v. Robinson*, 4th Dist. Washington No. 16CA22, 2017-Ohio-8273, ¶ 32 (a defendant who abandons a claim raised in his motion to suppress waives even plain-error review on appeal).

**{¶17}** Although Acklin challenged the probable cause for his arrest in his motion to suppress, at the suppression hearing, Acklin's counsel limited the issues before the trial court to whether Acklin's detention was illegally prolonged. The record of the suppression hearing contained the following colloquy at the start of the hearing:

DEFENSE COUNSEL: So, my client is arguing that he was illegally detained because he was—he had an encounter with the officer; it was not a basis for the encounter or being detained any longer than the moment they greeted each other. So he thought that—his argument is that he was free to leave and he should have been able to leave, but instead his driver's license was requested and the license was taken back to the cruiser and run through to see if it was current or not, and his argument today is he was illegally detained.

THE COURT: So, the argument he was—he was, in effect, arrested without any probable cause?

DEFENSE COUNSEL: Well, he wasn't arrested for a few more minutes, Your Honor.

THE COURT: He was already detained? He was unable to leave?

DEFENSE COUNSEL: Correct. Yes, Your Honor. Now, and I tried to explain to my client, I do believe the law is clear that the probable cause for arrest actually is supported by the gun. They pulled my client over,

even though the gun case is gone, I do believe it's clear that the court, the prosecution, a very clear case that the decision to arrest can be based today on the gun that was found in the car because that's what the— that's what happened that day. And it's really not relevant to—

THE COURT: This is just the encounter—

DEFENSE COUNSEL: Yes.

THE COURT: —the criminal encounter, the detainment. That there's no legal basis for it, correct?

DEFENSE COUNSEL: Right, right. That's it. Thank you, Your Honor.

During closing argument at the suppression hearing, Acklin's counsel briefly backtracked and argued that the officers lacked probable cause to arrest Acklin for OVI. However, at the end of his closing argument, Acklin's trial counsel reiterated his initial representation to the trial court that the issue for the trial court to consider at the suppression hearing was whether the initial detention of Acklin was illegally prolonged. Consequently, Acklin abandoned his argument that the motion to suppress should have been granted because Acklin's arrest lacked probable cause.

**{¶18}** Because Acklin abandoned the argument that his arrest lacked probable cause, he invited any error by the trial court's denying the motion to suppress on those grounds. *See Ulmer*, 1st Dist. Hamilton Nos. C-190304, C-190305 and C-190306, 2020-Ohio-4689, at ¶ 15. He cannot now revive the abandoned argument on appeal.

**{¶19}** Consequently, we overrule Acklin's second assignment of error.

## II. Manifest weight of the evidence.

{¶20}   In his first assignment of error, Acklin argues that his conviction for OVI is against the manifest weight of the evidence because the two officers' testimonies differ from their body-worn camera recordings in a few certain details and the sum total of those discrepancies is that the officers' accounts are not credible.

{¶21}   In deciding whether a conviction is against the manifest weight of the evidence, an appellate court determines whether the state has appropriately carried its burden of persuasion.  *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997) (Cook, J., concurring).  In reviewing the manifest weight of the evidence, an appellate court must review "the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Bailey*, 1st Dist. Hamilton No. C-140129, 2015-Ohio-2997, ¶ 59, quoting *Thompkins* at 387.  We will reverse the trial court's decision to convict and grant a new trial in "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶22}   Generally, the credibility of the witnesses is left primarily for the trier of fact. *State v. Porter*, 1st Dist. Hamilton No. C-200459, 2021-Ohio-3232, ¶ 25.  This principle reflects that Ohio appellate courts have long considered the trier of fact to be in the best position to judge the witnesses' credibility.  *See State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus; *State v. Jackson*, 1st Dist. Hamilton No. C-210634, 2023-Ohio-785, ¶ 17.  Consequently, a

reviewing court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is "patently apparent" that the trier of fact lost its way in arriving at its verdict. *See Porter* at ¶ 25.

**{¶23}** Acklin was convicted of misdemeanor OVI under R.C. 4511.19(A)(1)(a), which prohibits a person from operating any vehicle while "at the time of the operation, * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them." To convict, the state must prove that the defendant ingested alcohol or a drug of abuse and that either substance impaired the defendant's subsequent driving. *See State v. Bowden*, 1st Dist. Hamilton No. C-190396, 2020-Ohio-4556, ¶ 11, quoting *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 14.

**{¶24}** Acklin argues that the discrepancies between the officers' testimony and the body-worn camera footage rendered their testimony on whether he was "under the influence of alcohol" not credible. In proving this element, the state need not show any particular alcohol concentration in the defendant's body through chemical or other tests. *See State v. Panzeca*, 1st Dist. Hamilton Nos. C-190474 and C-190475, 2020-Ohio-4448, ¶ 15. Rather, the focus is on whether the state proved that Acklin had consumed alcohol sufficient to "adversely and appreciably impair[] his actions or mental processes and depriv[e] him of that clearness of intellect and control of himself which he would otherwise have had." *Id.* at ¶ 15, quoting *State v. Bakst*, 30 Ohio App.3d 141, 145, 506 N.E.2d 1208 (1st Dist.1986). This can be shown by evidence that the defendant admitted to consuming alcohol or that the defendant exhibited physical indicia of intoxication such as glassy or bloodshot eyes, slurred speech, staggering, swaying, or having the odor of an alcoholic beverage on his or her

breath or person. *State v. Maynard*, 1st Dist. Hamilton No. C-230160, 2023-Ohio-4619, ¶ 39-40.

**{¶25}** Acklin refused to take a chemical test and the officers did not conduct field-sobriety tests so the evidence of intoxication presented at trial was based on Officer Bailey's and Officer Owens-Jordan's testimonies and their body-worn camera footage. Officer Bailey testified that Acklin was observed driving at a high rate of speed through the Over-the-Rhine neighborhood and he heard Acklin's car tires squeal as he came to such a sudden stop. Officer Bailey further testified that when he encountered Acklin, he slurred his speech and was "extremely talkative, which is a common indicator of alcohol consumption or someone being intoxicated." Officer Owens-Jordan testified that Acklin had the odor of an alcoholic beverage on him, he slurred his speech, and he was not making sense when responding to questions. Officer Owens-Jordan also opined that Acklin was under the influence of alcohol.

**{¶26}** Acklin argues that three discrepancies in the officers' testimonies undercut their credibility. First, Acklin argues the body-worn camera footage shows he was compliant and cooperative though both officers testified that they felt Acklin was too aggressive to safely conduct field-sobriety tests. Officer Bailey's body-worn camera footage showed Acklin had a calm and cooperative demeanor until Officer Bailey handcuffed him and then he became more confrontational and demanded sobriety tests. Acklin contends this discrepancy implies the officers did not believe Acklin was intoxicated at the time of the stop and did not want to conduct field-sobriety tests because those tests would exonerate him.

**{¶27}** Acklin's theory of an unspoken conspiracy to deprive him of exculpatory evidence is undercut by the officers' later actions at the police station.

There, about an hour after the initial encounter, the officers offered Acklin a chemical-sobriety test, but Acklin refused the test. Had the officers wanted to conceal potentially exculpatory test results, they would not have offered Acklin a potentially exculpatory chemical test. Also, the officers offered the chemical test an hour later than they would have conducted field-sobriety tests, potentially giving Acklin's body more time to digest any alcohol and reduce its influence on his body. This later interaction at the police station undercuts the theory that the officers sought to conceal exculpatory evidence.

{¶28} The competing theory is that the officers did not think the scene of the stop was safe enough to conduct field-sobriety tests. That theory is undercut by the fact that the officers misremembered when Acklin was cooperative or confrontational. While Acklin's later demeanor supports the officers' explanation, Acklin was cooperative at first and multiple police cruisers formed a perimeter around Acklin's car, suggesting it was possible to safely conduct field-sobriety tests. However, that discrepancy is more likely the result of the two-year gap between the August 2021 arrest and the June 2023 testimony rather than a product of a conspiracy among the officers. *See State v. Phillips*, 4th Dist. Highland No. 09CA13, 2009-Ohio-7069, ¶ 37-40 (nearly two-year period of time may explain discrepancies between a detective's testimony about a drug transaction and recording of that transaction).

{¶29} Second, Acklin argues that the body-worn camera footage contradicts Officer Bailey's testimony that he found an open container of Wild Turkey branded bourbon in Acklin's car. The footage recorded Officer Bailey opening the rear driver's-side door and immediately retrieving an empty bottle of Wild Irish Rose branded wine from Acklin's car. The difference in brand name is immaterial: both are alcoholic

beverages and an empty container of alcohol in the vehicle is circumstantial evidence that Acklin consumed alcohol. *See State v. Fritsch*, 1st Dist. Hamilton No. C-220570, 2023-Ohio-2676, ¶ 12 (sticky note with methamphetamine residue in the driver's side sun visor is circumstantial evidence of intoxication by a drug of abuse). Similarly, Acklin's argument that the bottle of Wild Irish Rose is empty and thus was not an "opened container" under R.C. 4301.62 is immaterial to the empty bottle's probative value as circumstantial evidence of alcohol consumption, and Acklin was not charged with possession of an open container.

{¶30} Third, Acklin argues that Officer Bailey's testimony that he saw the bottle of Wild Irish Rose during a plain-view search of the car should be discounted because had that been true, then Officer Bailey did not have any need to ask Acklin's consent to search the car. Police officers are always entitled to ask permission to search a vehicle. *See United States v. Cathey*, 485 F.Appx. 119, 122 (6th Cir.2012). Thus, Officer Bailey asking Acklin for consent to search the car does not imply Officer Bailey had no reasonable or articulable basis to search the car. Acklin could also have consented to a broader search than what probable cause might permit.

{¶31} The discrepancies between the body-worn camera footage and the officers' testimonies two years later that Acklin raises do not suggest that the trier of fact clearly lost its way in resolving conflicts in the evidence and created such a manifest miscarriage of justice such that Acklin's conviction must be reversed. While there is a discrepancy in the explanation offered at trial as to why the officers did not conduct field-sobriety tests at the scene, the officers' body-worn camera footage showed Acklin slur his speech, clumsily retrieve his identification from his pants and drop one card, and struggle to identify his Ohio driver's license, each physical indica

of intoxication. *See City of Cincinnati v. Bryant*, 1st Dist. Hamilton No. C-090546, 2010-Ohio-4474, ¶ 27; *Maynard*, 1st Dist. Hamilton No. C-230160, 2023-Ohio-4619, at ¶ 39-40. Those physical indicia, together with the empty bottle of wine retrieved from Acklin's car, corroborate the officers' testimonies and suggest the trial court did not lose its way in believing those testimonies. The contradiction about the type of alcohol and brand of the bottle of Wild Irish Rose wine and whether it was an "opened container" that would justify a different, uncharged offense are immaterial to that bottle's value as circumstantial evidence of alcohol consumption. Similarly, the speculation about Officer Bailey's request for consent to search the vehicle does not negate that other facts supplied the officer with probable cause to search the vehicle. This is not the exceptional case in which the evidence weighs heavily against the conviction.

{¶32} Consequently, we overrule the first assignment of error.

### Conclusion

{¶33} Having overruled both assignments of error, we affirm Acklin's convictions.

Judgments affirmed.

**BOCK, P.J.**, and **BERGERON, J.**, concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.