French, J.
{¶ 1} In this appeal, we consider what evidence is sufficient to convict a defendant charged with operating a vehicle while under the influence (“OVI”) of a drug of abuse. Here, the state presented evidence that the defendant’s driving was impaired. The state also presented evidence that the defendant had ingested hydrocodone, a widely known drug of abuse. And the state presented an experienced police officer’s testimony that the defendant appeared to be under the influence of pain medication at the time of his arrest. If believed, this evidence was sufficient to support the OVI conviction and no expert testimony was necessary. Because the Second District Court of Appeals reached a contrary holding, we reverse its judgment.
Facts and Procedural History
{¶ 2} Appellee, Clinton Richardson, set this case in motion by rear-ending, at low speed, a car stopped ahead of his pickup truck at a red traffic light. The driver of the stopped ear approached Richardson to speak with him but found his speech slurred and incomprehensible. While attempting to exchange information, Richardson dropped all his cards on the ground. After the driver returned to her car, she felt it move a couple of times, as though nudged by Richardson’s truck. She called the police because she feared for the safety of Richardson’s child passenger.
{¶ 3} Dayton Police Officer Jonathan Miniard responded to the scene. When he approached Richardson’s truck, he noticed that Richardson had tried to light a cigarette but had succeeded only in singeing his hair. Officer Miniard had to put Richardson’s truck in park after Richardson failed to do so. The officer also noticed Richardson’s slurred speech. And when he asked Richardson to exit the truck, he watched Richardson slide out.
{¶ 4} Officer Miniard administered standard field sobriety tests, which Richardson failed. And he asked Richardson to submit to a blood test, but Richardson refused. Ultimately, he arrested Richardson for OVI.
{¶ 5} Richardson had a prior felony OVI conviction, so the grand jury indicted him on one third-degree-felony OVI count. See R.C. 4511.19(G)(1)(e). Because his small child was with him in the vehicle, the grand jury also indicted him on one count of endangering children.
*556 {¶ 6} The parties tried the case to the court. The state relied on the testimony of the woman whose car Richardson had rear-ended and that of Officer Miniard. In the defense case-in-chief, Richardson testified that he had a prescription for hydrocodone acetaminophen—pills containing 10 milligrams of hydrocodone and 325 milligrams of acetaminophen—but also that he had last taken the medication two days prior to the accident. He testified that at the time of the accident, he was actually suffering from withdrawal from the medication. He further testified that he had been taking the medication for so long that he no longer experienced side effects from it. Richardson also presented expert testimony from Dr. Charles Russell, who specializes in emergency medicine and chemical dependency. Dr. Russell opined that Richardson’s behavior at the time of the accident was consistent with the effects of withdrawal from an opiate such as hydrocodone and was inconsistent with being under the influence of an opiate.
{¶ 7} The trial court convicted Richardson of both charges and sentenced him to one year in prison. From that judgment, Richardson appealed to the Second District Court of Appeals.
{¶ 8} A divided panel of the Second District vacated the trial court’s judgment, finding insufficient evidence to support Richardson’s OVI conviction. Specifically, it held that there was no evidence to connect Richardson’s use of hydrocodone with his impairment. 2015-Ohio-757, 29 N.E.3d 354, ¶ 27. With reasoning that we largely mirror, Judge Hall dissented: “On this record, where it is undeniably apparent that the defendant was substantially impaired because he had taken pain killers, more specifically hydrocodone, I do not believe it was necessary to introduce evidence of the pharmaceutical properties of what he ingested to find him guilty of driving under the influence.” Id. at ¶ 36 (Hall, J., dissenting).
{¶ 9} The Second District certified that its judgment conflicted with State v. Stephenson, 4th Dist. Lawrence No. 05CA30, 2006-Ohio-2563, 2006 WL 1413249. In case No. 2015-1048, we determined that a conflict existed. 143 Ohio St.3d 1439, 2015-Ohio-3427, 36 N.E.3d 187. The state of Ohio also filed a jurisdictional appeal in case No. 2015-0629, which we accepted. Id. We consolidated the cases for briefing. Id.
Analysis
{¶ 10} We begin with the certified-conflict question:
“Once the State presents evidence that a person is impaired and has taken a specific prescription medication, is the trier of fact able to draw a reasonable inference that the driver has violated R.C. 4511.19(A)(1)(a) or R.C. 4511.19(A)(2) without evidence (lay or expert) as to how the medication *557 actually affects the driver and/or expert testimony about whether the particular medication has the potential to impair a person’s judgment or reflexes?”
148 Ohio St.3d 1439, 2015-Ohio-3427, 36 N.E.3d 187, quoting 2d Dist. Montgomery No. 26191 (May 27, 2015).
{¶ 11} Article IV, Section 3(B)(4) of the Ohio Constitution authorizes the judges of a court of appeals to certify a conflict to us whenever they reach a different answer—to the same question—from that reached by any other court of appeals of this state. Richardson succeeded below on a sufficiency challenge. But the conflict case, State v. Stephenson, 4th Dist. Lawrence No. 05CA30, 2006-Ohio-2563, 2006 WL 1413249, involved only a manifest-weight-of-the-evidence challenge. Id. at ¶ 11. Nearly 20 years ago, we clarified that sufficiency and manifest weight are distinct tests. State v. Thompkins, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), paragraph two of the syllabus; accord Stephenson at ¶ 13. That alone refutes the certification of a conflict here. Yet the case for finding a conflict withers further when we consider that two of the three judges who decided Stephenson concurred in judgment only. We decertify the conflict and decline to answer the certified-conflict question.
{¶ 12} We next turn to the state’s proposition of law:
When a drug of abuse is at issue in an OVI case, evidence that a defendant was driving impaired, combined with evidence that a defendant took a specific drug of abuse at the time of the offense, is enough to meet a sufficiency of the evidence challenge, pursuant to R.C. 4511.19(A)(1).
Under the facts of this case, the proposition of law holds true.
{¶ 13} The sufficiency of the evidence is a test of adequacy. Thompkins at 386. When evaluating the adequacy of the evidence, we do not consider its credibility or effect in inducing belief. Id. at 386-387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. Id. This naturally entails a review of the elements of the charged offense and a review of the state’s evidence.
{¶ 14} The state charged Richardson with third-degree-felony OVI under R.C. 4511.19(A)(2), which prohibits individuals with an OVI conviction within 20 years of the charged offense from operating a vehicle “while under the influence of alcohol, a drug of abuse, or a combination of them” and, after an OVI arrest, also prohibits them from refusing to submit to chemical tests.[1] The definition of *558 “drug of abuse” is imported from R.C. 4506.01. R.C. 4511.181(E). That term means “any controlled substance, dangerous drug as defined in section 4729.01 of the Revised Code, or over-the-counter medication that, when taken in quantities exceeding the recommended dosage, can result in impairment of judgment or reflexes.” R.C. 4506.01(M). R.C. 4729.01(F)(1)(b), in turn, defines “dangerous drug” to mean, among other things, a drug that may be dispensed only with a prescription under R.C. Chapter 3719. And R.C. 3719.41 places hydrocodone in Schedule II’s list of opium and opium-derived narcotics—a class of drugs that may be dispensed only with a prescription, R.C. 3719.05(A)(3). Distilled for our purposes, those statutes say one thing: hydrocodone is a drug of abuse. So if the evidence, viewed in the light most favorable to the state, proved that Richardson had ingested hydrocodone and that it impaired his driving, it was sufficient to support his OVI conviction.
{¶ 15} The state presented sufficient evidence to prove that Richardson had ingested hydrocodone. The officer who responded to the accident, Officer Jonathan Miniard, had 14 years of experience as a Dayton police officer, and he had had training and refresher courses on impaired-driving detection. On direct examination, Miniard testified:
[I] asked him had he taken any medication. He advised that he was on pain medication. I asked him if he had taken any. He said yeah.
⅝ sjs ⅜
Q. And he said he had taken pain medication.
A. Yeah, he was on pain medication.
Q. Okay. And from your conversation with him, the back and forth that you guys were engaged in, did it seem like he was currently on pain medication?
A. Yes.
In addition, Richardson testified:
Q. But the two pain medications that you were taking at that point were ibuprofen, about 800 milligrams, and hydrocodone, 10-325.
A. Correct.
Q. Okay. So when you said to him, and regardless if you remember it or not, when you said to Officer Miniard you had taken pain medications, would you have been referring to one of those two medications?
A. Yes.
*559 {¶ 16} After the prosecution played the police video of the incident, the following exchange occurred with Richardson:
Q. And you would agree with me that Officer Miniard asked you what you had taken. You mouthed something. We can’t really hear it. But his response is did you say Oxycodone and you shook your head yes.
A. He said codone. That’s all I heard-—
Q. I apologize. Codone. When you shook-—■
A. He said codone.
Q. —your head yes to that question.
A. Sure. Hydrocodone.
Q. And he followed that up with how much did you take and you mouthed something and he says 3 milligrams and you shake your head no, correct?
A. Right.
Q. And then you mouth what appears to be the word thirty. And he says 30 milligrams and you shake your head yes.
A. I—yes. Can I elaborate?
Q. No.
{¶ 17} Thirty milligrams of hydrocodone would be consistent with Richardson having consumed three of his hydrocodone acetaminophen pills. Viewed in the light most favorable to the state, this evidence was sufficient to establish that he had ingested hydrocodone.
{¶ 18} The state also presented significant—and sufficient—evidence of Richardson’s impairment. Richardson rear-ended another vehicle. His speech was slurred. He slid, rather than stepped, out of his truck. He singed his hair while trying to light a cigarette. And upon testing by the responding officer, Richardson exhibited numerous indications of impairment: on the walk-and-turn test, he demonstrated seven out of eight possible signs of impairment, and during a one-legged stand, he put his foot down multiple times and kept the foot elevated for only about 8 out of 30 seconds during the longest stretch. Based on his experience, the officer believed that Richardson “was under the influence of some type of possibly narcotics.” Again, hydrocodone is classified as a narcotic. This evidence, if believed, was more than sufficient to establish Richardson’s impairment.
*560 {¶ 19} Justice O’Neill’s dissent asserts that no rational factfinder could have linked Richardson’s ingestion of hydrocodone with his demonstrated impairment. Dissenting opinion, O’Neill, J., at ¶ 32. When the effects of a drug are sufficiently well known—as they are with hydrocodone—expert testimony linking ingestion of the drug with indicia of impairment is unnecessary. And there was lay testimony that connected Richardson’s impairment to the hydrocodone, i.e., the testimony of an experienced and well-trained police officer. On these facts, we hold that the evidence was sufficient to support Richardson’s OYI conviction.
{¶ 20} Because the court of appeals erroneously concluded that expert testimony was required to link the ingestion of hydrocodone with Richardson’s impairment, we reverse its judgment.
Conclusion
{¶ 21} We reverse the judgment of the Second District Court of Appeals. After holding that the evidence supporting Richardson’s conviction was insufficient, the Second District held moot his manifest-weight-of-the-evidence challenge. 2015-Ohio-757, 29 N.E.3d 354, at ¶ 28. We remand the cause to the appellate court for consideration of that assignment of error.
Judgment reversed and cause remanded.
O’Connor, C.J., and O’Donnell and Kennedy, JJ., concur.
Lanzinger, J., dissents, with an opinion.
O’Neill, J., dissents, with an opinion joined by Pfeifer, J.

. Offenders who, like Richardson, have a prior felony OVI conviction face third-degree-felony OVI charges in all future OVI prosecutions. R.C. 4511.19(G)(1)(e).