[Cite as *Cleveland v. Kuhlman*, 2020-Ohio-3452.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

CITY OF CLEVELAND,                    :

    Plaintiff-Appellee,          :

                                    No. 108686

    v.                           :

GINA KUHLMAN,                         :

    Defendant-Appellant.         :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:**  REVERSED
**RELEASED AND JOURNALIZED:**  June 25, 2020

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 18-TRC-037812

---

### *Appearances:*

Barbara Langhenry, City of Cleveland Director of Law, and Jonathan L. Cudnik, Assistant City Prosecutor, *for appellee.*

Eric M. Levey and Jaye M. Schlachet, *for appellant.*

PER CURIAM:

{¶ 1} Appellant, Gina Kuhlman, appeals her convictions for driving under the influence ("OVI") in violation of R.C. 4511.19(A)(1)(a) and failure to control in violation of Cleveland Codified Ordinances ("CCO") 431.34(A) which were entered

in the Cleveland Municipal Court. For the reasons that follow we reverse the convictions and order the appellant discharged.

{¶ 2} On December 30, 2018, appellant was cited by Cleveland police for violating R.C. 4511.19(A)(1)(a), driving under the influence of alcohol or drug of abuse, R.C. 4511.19(A)(2)(a), refusing to submit to testing and CCO 431.34(A), failure to control.

{¶ 3} The case did proceed to a trial by jury and appellant was found guilty of violating R.C. 4511.19(A)(1)(a). Separately, the trial court found her guilty of the minor misdemeanor violation of CCO 431.34(A).

{¶ 4} Appellant was sentenced to 180 days incarceration with 150 days suspended. She was fined $600 on the charge of OVI and $50 for failure to control. The appellant did serve the imposed jail time. She was placed on three years of active community control supervision with conditions and was afforded no driving privileges.

{¶ 5} Appellant has submitted 13 assignments of error for our consideration:

1. Under *Birchfield v. North Dakota* the trial court erred when it permitted the city to prosecute a R.C. 4511.19(A)(2) OVI refusal based upon an alleged refusal of a warrantless intrusive non-breath chemical test which subjected appellant to an unlawful search by threat of criminal prosecution in violation of the Fourth Amendment to the United States Constitution which prejudiced appellant and improperly lead to the admission of otherwise inadmissible evidence that contributed to her OVI conviction under R.C. 4511.19(A)(1)(a).

2. The trial court erred when it permitted the city to go forward to trial on a complaint which charged both violations of R.C. 4511.19(A)(1)(a) and R.C. 4511.19(A)(2) and directly violated the statute governing charging multiple versions of an OVI offense.

3. Based upon the prohibition against double jeopardy and the doctrines of law of the case or otherwise estoppel and res judicata the city of Cleveland should not have been permitted to go forward in a trial for the refusal to submit to a chemical test where the same court had previously determined appellant did not refuse a chemical test and vacated her ALS.

4. Prosecutorial misconduct improperly lead [sic] to the convictions.

5. Appellant was subject to a due process violation as a result of vindictive prosecution.

6. The trial court erred and abused its discretion when it precluded appellant from introducing expert testimony.

7. The trial court erred when it precluded appellant from questioning her mechanic using pictures of her damaged vehicle.

8. The trial court erred in its jury instructions that made incorrect statements of law, failed to advise of agreed stipulations and failed to give cautionary instructions.

9. Appellants convictions were not supported by sufficient evidence.

10. Appellant's convictions were against the manifest weight of the evidence.

11. The trial court erred when it permitted opinion testimony of lay witnesses regarding whether appellant was intoxicated.

12. Appellant's trial counsel was ineffective.

13. Cumulative error deprived appellant of a fair trial.

As we find the ninth assignment of error to be dispositive in this case, we will not address the remaining 12 assignments.

{¶ 6} Melissa Martino testified that, on December 30, 2018, she was working at the Chipotle restaurant located at 16729 Lorain Avenue in Cleveland, Ohio and that after she was advised of an incident by a co-worker, she observed "a lady come in with two boys that came in every Sunday" and sit at a table. She identified

appellant as the lady. The appellant ordered coffee. Martino testified that she pronounced the word "coffee" in an unusual fashion but she did state "I don't want to say slurred." After asking the woman if she needed medical assistance, which was refused, Martino had no further interaction with appellant. She further testified to observing a bump on appellant's head.

{¶ 7} Chipotle employee Emily Madej testified that on December 30, 2018, she was working when she was advised by customers of an incident in the parking lot. Madej testified that she exited the building through a back door and "I had seen a car over the curb. And at this point we had boys helping the lady outside of her car." Madej observed the wheels of the vehicle "over the curb" and the males helping the female, whom she identified as the appellant, into the restaurant. Madej called 911. In that call, Madej reported that the female driver was "obviously drunk." However, she testified that she made that statement because "I've never seen anyone drive over a curb like that, so I assumed they would be drinking or under some kind of influence of some kind of drugs." Madej did admit that she did not engage in any kind of personal contact with appellant and the closest she ever was to appellant was a distance of approximately ten feet.

{¶ 8} A 12-year Cleveland police veteran, David Grasha, testified that he and his partner were dispatched to the Chipotle restaurant on Lorain Avenue at approximately 12:30 p.m. on December 30, 2019. Upon arrival he observed a Chrysler "parked over a curb in the parking lot". Specifically, the two front tires were

over the curb.  The vehicle was not occupied.  Grasha observed broken glass inside of the vehicle.

{¶ 9} Grasha and his partner entered the restaurant and approached the appellant whom he described "a little incoherent."  The officers escorted appellant outside and, according to Grasha, "she was not walking in a normal gait.  She was stumbling."  He also testified that her speech was "slurred."  Grasha did observe a "sports bottle" in the vehicle and detected the smell of "like an alcohol drink" and that it smelled like a holiday drink known as "apple pie."  He did not smell alcohol on appellant's breath.  The bottle was never taken into evidence nor were the contents tested.

{¶ 10} The officers transported appellant to the Fairview Hospital Emergency Department.  Grasha was not present in the examination room when the "2255 form" — the Report of Law Enforcement Officer Administrative License Suspension/Notice of Possible CDL Disqualification/Immobilization/Forfeiture — was executed by appellant even though he signed as a witness to her signature and to her being advised of the contents of the 2255.  He did admit that "I was — being told it was read."

{¶ 11} It should be noted that directly below appellant's signature is a handwritten notation "submitted urine and blood to hospital."

{¶ 12} Jordan Gaige was present in the Chipotle parking lot when he observed a vehicle "hop[p]ing the curb and go into the street."  He testified that he approached the vehicle and spoke with appellant who he believed "was under the

influence of something." Gaige and a friend assisted appellant into the Chipotle as "she was stumbling, kind of tripping over her own feet." Under cross-examination, Gaige testified to the condition of appellant's vehicle, stating "[t]he sunroof was smashed in and there was glass in the car." Gaige testified that he did not smell alcohol but he did observe blood on appellant's hand.

{¶ 13} Aggray McBean then testified that he met Gaige, after their church services, at the Chipotle restaurant. McBean testified that he and Gaige exited their separate vehicles and while they were looking at a vehicle "we were looking at the car that went over the curb and we watched the car back up and turned around and then went over another parking space and went over another curb."

{¶ 14} McBean testified that they approached Kuhlman's vehicle, and noticed the "sunroof or something was broken in" and when Kuhlman exited the vehicle, "there was glass on her legs and over the seat. And her hands had some blood on it." McBean escorted Kuhlman into Chipotle and observed that "she didn't seem okay."

{¶ 15} Samantha Haggerty, a Cleveland police officer commissioned in September 2015, testified that she and her partner, David Grasha, were assigned to respond to a Chipotle restaurant for a "possibly, intox, high driver, in a red Chrysler, who was trying to drive away, but she was on the sidewalk, in the parking lot, and threatening customers inside Chipotle." Upon entering the restaurant, Haggerty approached the female, identified as the appellant, and asked her to walk outside. According to Haggerty, appellant was unsteady on her feet and her speech was

indicative of alcohol and narcotics. The officers summoned EMS to the scene but appellant refused medical attention. Haggerty testified to observing a water bottle in appellant's vehicle, which, was in the parking lot and that the contents smelled like vodka. Although she normally would have taken a sample of the contents, she failed to do so in this instance.

{¶ 16} According to Haggerty, the appellant was transferred to Fairview Hospital where Haggerty intended to read to her from the BMV 2255 form which would advise appellant of her rights and the consequences of a failure to submit to a blood or urine test. Haggerty testified that appellant initially agreed to testing, then indicated that she wanted to speak with "Myron," "then still she's saying, like she doesn't know what she wants to do * * *. So that's why we get to the point where we're, like, okay, well, we'll take you to county then. Cause if you're not going to submit to my test here, there's no medical reason for her to be there. But the nurses interject in a minute that they have to treat her." At that time, appellant began to undress, agreed to submit to the test and began to urinate on the floor of the treatment room during which time the nurse was able to collect a sample.

{¶ 17} Ultimately, according to Haggerty, appellant again became argumentative and instructed the nurse not to provide the officers with the specimen to which the nurse complied.

{¶ 18} According to Haggerty, "me and my partner were both in the room" when appellant signed the 2255 form and wrote something under her signature.

{¶ 19} As a result of appellant's instructions to the health care provider not to provide the specimen to the officers, Haggerty marked the form as "refused." Appellant was then transported to Cuyahoga County Jail.

{¶ 20} Haggerty testified on cross-examination, and contrary to the testimony of her partner, Grasha, she was "100 percent" certain that he was in the examination room to witness appellant affix her signature to the 2255 form. Further, Haggerty admitted on cross-examination that her body cam audio reflected her instruction to the hospital to "pour it out" in reference to the urine specimen.

{¶ 21} The defense called Michael Peacock, owner of an auto body repair shop, as its sole witness. Mr. Peacock testified that he repaired damage to the appellant's automobile by replacing the sunroof because "something impacted the roof area, the front of the roof area, and the sunroof itself * * * something had impacted it, and left, like, scuff marks, and it skipped and went down the side of the, the driver's side of the vehicle, too, in the back, in the rear."

{¶ 22} Appellant filed motions for acquittal pursuant to Crim.R. 29 at the close of the state's case as well as the close of her own. The court denied both motions.

{¶ 23} The parties stipulated to the admission of hospital records of Gina Kuhlman from the Fairview Hospital Emergency Department and a prior OVI conviction.

{¶ 24} The emergency department provider note contained in the records, signed by Jeffrey Ruwe, M.D., reflects that both the "drug screen, alcohol are

negative.  Patient is coherent, walking with stable gait.  Respectful to me, although somewhat argumentative to police.  Patient has no slurred speech.  Stable for discharge."

{¶ 25} The jury found Kuhlman guilty of violating R.C. 4511.19(A)(1)(a) for operating her vehicle while under the influence of alcohol or drug of abuse.  It found her not guilty of violating R.C. 4511.19(A)(2)(a) for refusing to submit to testing.  Separately, the court found Kuhlman guilty of failure to control in violation of CCO 431.34(A).

**Law and Analysis**

{¶ 26} A challenge to the sufficiency of the evidence requires this court to view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), at paragraph two of the syllabus.  "The sufficiency of the evidence is a test of adequacy."  *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).  We decide whether the evidence, if believed, can sustain the verdict as a matter of law.  *Id.*

**OVI Conviction**

{¶ 27} R.C. 4511.19(A)(1)(a) in relevant part provides:

No person shall operate any vehicle * * * within this state, if, at the time of the operation * * * [t]he person is under the influence of alcohol, a drug of abuse, or a combination of them.

**{¶ 28}** The Supreme Court of Ohio has determined:

[w]hen a drug of abuse is at issue in an OVI case, evidence that a defendant was driving impaired combined with evidence that a defendant took a specific drug of abuse at the time of the offense, is enough to meet a sufficiency of the evidence challenge pursuant to R.C. 4511.19(A)(1).

*State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 12.

**{¶ 29}** The toxicology report provided by Fairview Hospital reflects no positive results from the urine specimen submitted by appellant.

**{¶ 30}** Accordingly, we vacate Kuhlman's conviction for violating R.C. 4511.19(A)(1).

**Failure to Control Conviction**

**{¶ 31}** CCO 431.34(A) provides:

No person shall operate a motor vehicle or motorcycle upon any street or highway without exercising reasonable and ordinary control over such vehicle.

**{¶ 32}** CCO 401.61 defines "street" and "highway" as being synonymous and as constituting of "the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purpose of vehicular travel."

**{¶ 33}** The city presented no evidence to establish that Kuhlman was operating her car on a street or highway and was doing so without exercising reasonable and ordinary control over it. Her questionable driving was observed solely on private property.

**{¶ 34}** *State v. Turner*, 5th Dist. Licking No. 2007 CA 00141, 2008-Ohio-6666, is instructive as to this point. In *Turner*, the defendant was charged with

municipal violations including "failure to control" after he crashed his car into an unoccupied vehicle in a private parking lot. *Id.* at ¶ 8, 22. The court found there was insufficient evidence to establish the accident occurred on a public road or highway because the parking lot "cannot be defined as a public road or highway." *Id.* at ¶ 23.[1]

**{¶ 35}** We vacate Kuhlman's failure to control conviction because there is no evidence that she operated her car on a street or highway.

**Additional Considerations**

**{¶ 36}** Although we have vacated Kuhlman's convictions based upon the sufficiency of the evidence, we note that this trial was fraught with error and we are thus compelled to address some of the issues raised in the other assignments of error.

**{¶ 37}** Without addressing Kuhlman's prosecutorial misconduct claim, charges in this case should have never been filed. The city was, or should have been aware, that Kuhlman, at the request of arresting Officer Haggerty, did submit a urine specimen during treatment at Fairview Hospital and the city knew, or should have known, that Haggerty was advised in the emergency department that the specimen did not show the presence of alcohol or any drug. That the officers failed to take custody of the specimen and transport it to a laboratory of their choice for testing is no fault of Kuhlman. Further, the evidence that Haggerty instructed a nurse to "pour

---

[1] As is the case here, in *Turner*, the relevant municipal code defined "street" and "highway" as "the entire width between the boundary lines of every way open to the use of the public as a thoroughfare for purposes of vehicular travel." *Id.* at ¶ 23, quoting Newark City Ordinances 402.43.

out" the urine specimen is appalling and could be construed as tampering with evidence.

{¶ 38} With respect to the charge of failure to control, again, there is simply no evidence in that Kuhlman was driving on a street or highway without using reasonable care. It is apparent that she was in a disoriented state in the parking lot. However, when or where this state of disorientation arose and whether it occurred on a street or highway is unknown to us and wholly absent from the record.

{¶ 39} Based upon the foregoing, the trial court should have granted Kuhlman's Crim.R. 29 motion for acquittal.

{¶ 40} As to the trial court's preclusion of expert testimony on behalf of Kuhlman, again the court was wrong and clearly misapplied Crim.R. 16(K). Kuhlman provided the city's attorney with medical records and a subsequent report that was prepared by Advance Medical Services owner, Raj Saini. The city conceded that. However, the city's attorney claimed to not have received it until the day of trial. Kuhlman's counsel stated that he had previously provided this letter to one of several assistant prosecutors who were involved in pretrials.

{¶ 41} The trial court refused to allow counsel to make an offer of proof pursuant to Evid.R. 103. Therefore, it is unclear to us what the contents of it were and how, if at all, it differed from the report which the city conceded it did receive. Did the report include an opinion of Mr. Saini that could be construed as his opinion? The trial court's failure to allow a proffer by counsel was error.

{¶ 42} The trial court denied admission stating "Expert testimony requires a filing, not exchange. The Court has to be aware of that. There is no record. I just looked through it, in my Court records, to indicate there would be any testimony regarding expert testimony. As such, there will be none proffered, on the record, in my file."

{¶ 43} The trial court is wrong. Crim.R. 16(K) does not require the filing of an expert report. It mandates the disclosure of the same to opposing counsel. *See* Crim.R. 16(K).

{¶ 44} Further, the trial court stated with respect to "such tests" that "I've never heard of such tests. I don't believe there's any medical standard with any certainty that can be presented to the Court to support such tests." Merely because the court was unfamiliar with the testing conducted by Advance Medical Services is insufficient to preclude such evidence being presented. We make no determination as to that particular evidence or the proposed witness' qualifications and know not as to whether he has been qualified as an expert witness in the past. We are merely articulating that the proper manner for the court to determine the admissibility of such testimony is to conduct a hearing pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

{¶ 45} Finally, although neither counsel objected to the jury instructions as submitted to the jury, the court failed to provide instructions, although requested to do so, as to the stipulated exhibits, i.e., Kuhlman's medical records and it provided erroneous instructions as to the law on O.V.I.

{¶ 46} Jury instructions about the stipulations would have informed the jury of the import of the stipulations as well as its obligation to accept them as conclusively proven without the need for further evidence.

{¶ 47} Any other error in the jury instructions as provided by the trial court is de minimis. Nevertheless, it still bears mention that review of the record reflects that the trial court sought to expeditiously obtain a verdict at the expense of providing counsel with sufficient opportunity to review the instructions prior to submitting them to the jury and it failed to review the instructions proposed by either side.

{¶ 48} Judgment reversed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the municipal court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE


_____
EILEEN A. GALLAGHER, JUDGE


_____
LARRY A. JONES, SR., JUDGE