[Cite as *State v. Sohar*, 2021-Ohio-3623.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | | JUDGES: |
| STATE OF OHIO | : | Hon. Craig R. Baldwin, P.J. |
| | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2020 CA 00169 |
| JOHN SOHAR | : | |
| | : | |
| Defendant-Appellant | : | OPINION |


CHARACTER OF PROCEEDING:    Criminal appeal from the Stark County
                            Court of Common Pleas, Case No.
                            2020CR0984

JUDGMENT:                   Reversed


DATE OF JUDGMENT ENTRY:     October 6, 2021


APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

KYLE STONE                            D. COLEMAN BOND
Stark County Prosecutor               116 Cleveland Avenue N.W., Ste 600
BY: VICKI L. DESANTIS                 Canton, OH  44702
110 Central Plaza South
Canton, OH  44702

*Gwin, P.J.*

{¶1} Defendant-appellant John Sohar ["Sohar"] appeals his conviction for Sexual Battery in violation of R.C. 2907.03(A)(10) after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2} In May of 2019 M.M.[1] a fourteen year old high school freshman was struggling with self-esteem, which worsened throughout the school year. The school called to tell M.M.'s adoptive mother ["Mother"] that M.M. had been texting or sending message to friends about self-harm and depression. M.M. admitted to the school that she was cutting herself. Mother took M.M. to Akron Children's Hospital for psychiatric hospitalization for several days. The hospital recommended M.M. do outpatient children and adolescent counseling.

{¶3} Sohar was a school based mental health counselor at M.M.'s high school. Sohar began counseling session with M.M. in the summer of 2019. M.M.'s adoptive parents went with M.M. each time for the therapy sessions and sat out in the hall. Sohar left his counseling position in August 2019. M.M. became upset that Sohar was leaving to the point that Sohar recommended to M.M.'s parents that they take her to the hospital for evaluation. (3T. at 195-196).[2] M.M. was seen at the hospital in August 2019 because of a concern of suicidal ideation related to Sohar's leaving and her treatment ending with him. However, the hospital did not admit M.M at that time. (3T. at

---

[1] See, OH ST Supp. R. 44(H) and 45(D) concerning the use of personal identifiers.
[2] The transcript of Sohar's jury trial will be referred to as "__T. at __", signifying the volume number and the page number.

90-91). Thereafter, M.M. continued with another therapist at her office, and not at the school.

{¶4} Sohar returned to his counseling position at M.M.'s high school in September 2019. Mother gave permission for M.M. to resume her therapy sessions with Sohar. In September, M.M. told Sohar she liked him romantically. M.M. testified Sohar said he liked her too that way, but nothing could come of it because he would get in trouble. M.M. testified that around a week later she was crying and Sohar got out of his chair and walked around her three times and then rubbed her right shoulder, and then sat back down. Following that, M.M. testified she had a panic attack and sat on the floor, while Sohar then sat in her chair and just watched her.

{¶5} A week later in another session M.M. testified that Sohar got up from his chair in his office while M.M. was seated and began rubbing her shoulders. Then he moved his hands down to her stomach and lifted up her shirt and started messing with her stomach, then he raised his hands and started touching her chest (breasts) for about three minutes. M.M. testified that after this happened they decided to give each other a little hug after each session.

{¶6} The next incident occurred while M.M. was seated in Sohar's office. M.M. testified that Sohar got out of his chair and did the shoulder thing again. "And he had tried to, like, can we trust again." (2T. at 205). M.M. continued, "I didn't do anything, because I didn't know what he wanted from me ...It was really awkward. And I was scared ...And I froze." (Id.) M.M. continued, then he straddled the chair and sat on her legs for about a minute...I just sat there and I looked down at my lap." 2T. at 206. "He took my hand and placed it on his penis (outside his clothes)." 2T. at 206-207. M.M. testified that Sohar said,

"Feel how hard I am for you." 2T. at 207. M.M. testified Sohar touched her breasts, and vaginal area and put his fingers inside her three times. 2T. at 207-208. After a few minutes she got up from the chair and walked across the room panicking and feeling like she would pass out again. Sohar told M.M. she should shave her pubic hair and he could bring an electric razor, but it would make too much noise.

{¶7} Mother testified that they became concerned when Father saw text messages between M.M. and Sohar on her phone. Mother testified they were more like friend texts and not patient-therapist stuff that raised a red flag. Mother testified the Akron Children's therapist suggested Mother come up with a plan to limit M.M.'s time with Sohar. Also, there should be no phone calls outside of the normal session of one hour a week or two 30-minute sessions or therapy would be stopped.

{¶8} On October 8, 2019, M.M., her parents, Sohar, and the high school counselors had a meeting. 3T. at 169-170. The meeting was to discuss M.M. no longer seeing Sohar for counseling.

{¶9} On October 10, 2019, M.M. went to the school's Digital Learning Center with a school counselor and asked to give Sohar a letter. When Sohar arrived in the Digital Learning Center, M.M. tore six pages out of her notebook, handed them to Sohar and then left with the school counselor.[3] After Sohar received this letter, he went into his office and began to read it; however, before he could finish reading the first page, the school counselor who was with M.M. called Sohar to come to her office. Sohar immediately took the letter to the school counselor's office. There Sohar began reading the letter to the school counselor. Upon reading a detail accusing him of inappropriate

---

[3] The letter was actually twelve pages as each page was written both on the front and back of each sheet of paper.

behavior he stopped, and then immediately handed the letter to the school counselor. Sohar testified that he then contacted his supervisor, who came to the school counselor's office and took possession of the letter.

{¶10}　Sohar testified at trial that he never represented to M.M. that sexual conduct was necessary for mental health treatment purposes. 3T. at 204; 217-218. Sohar denied any touching or other sexual conduct occurred between himself and M.M. (3T. at 204; 210; 217-218).

{¶11}　After the conclusion of trial, the jury returned a guilty verdict against Sohar for sexual battery pursuant to R.C. 2907.03(A)(10).　 The trial court deferred sentencing until October 27, 2020.　On October 27, 2020, the trial court sentenced Sohar to the maximum possible sentence of sixty months of incarceration.

*Assignments of Error*

{¶12}　Sohar raises three Assignments of Error,

{¶13}　"I. THE APPELLEE FAILED TO PRESENT SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION OF SEXUAL BATTERY AGAINST THE APPELLANT UNDER R.C. 2907.03(A) (10), AND THE CONVICTION MUST BE REVERSED.

{¶14}　"II. THE APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED, AND MUST BE REVERSED.

{¶15}　"III.　 THE TRIAL COURT ERRED IN IMPOSING A MAXIMUM PRISON SENTENCE OF SIXTY (60) MONTHS FOR THE APPELLANT'S CONVICTION OF SEXUAL BATTERY UNDER R.C. 2907.03(A)(10), A FELONY OF THE THIRD DEGREE."

I.

{¶16} In his first Assignment of Error, Sohar contends his conviction must be reversed and vacated because the state failed to present sufficient evidence to sustain a conviction of sexual battery against him under R.C. 2907.03 (A)(10). Specifically, Sohar argues the state failed to present sufficient that he induced the M.M.to submit to sexual conduct by falsely representing to M.M. that the sexual conduct is necessary for mental health purposes. We agree.

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶17} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶18} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997*; *Walker*, at ¶30. "The relevant inquiry is whether, after viewing the

evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, '*if believed*, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

      **Issue for Appellate Review:** *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of Sohar's guilt on each element of the crime of Sexual Battery in violation of R.C. 2907.03(A)(10) for which he was convicted beyond a reasonable doubt.*

      {¶19} Sohar was found guilty of one count of Sexual Battery. As relevant to this case, R.C. 2907.03 provides,

      (A) No person shall engage in sexual conduct with another, not the spouse of the offender, when any of the following apply:

                        * * *

      (10) The offender is a mental health professional, the other person is a mental health client or patient of the offender, and *the offender induces*

*the other person to submit by falsely representing to the other person that*

*the sexual conduct is necessary for mental health treatment purposes...*

Emphasis added. Ohio law defines "sexual conduct" as, " vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A). Ohio law defines "sexual contact" as, " any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶20} R.C. 2907.03(A)(10) clearly and unambiguously requires three elements be proven beyond a reasonable doubt.

{¶21} First, the offender is a mental health professional, and the other person is a mental health client or patient of the offender. There is no dispute that Sohar was a mental health professional and that M.M. was his client.

{¶22} Second, sexual battery requires sexual *conduct* as opposed to sexual *contact*. In the case at bar, M.M. testified that Sohar put his fingers into her vagina. 2T. at 207-208.

{¶23} The third element of sexual battery pursuant to R.C. 2907.03(A)(10) requires the state to prove beyond a reasonable doubt that "*the offender induces the other person to submit by falsely representing to the other person that the sexual conduct is necessary for mental health treatment purposes.*" The fact that a romantic or sexual

involvement between a mental health professional and a client took place during the same time period that treatment was taking place is not enough to make the conduct criminal. The Ohio Legislature has authorized criminal liability to be impose under specific, narrowly tailored and explicit circumstances. As the Ohio Supreme Court has observed,

> Initially, legislative efforts focused on criminalizing *any sexual contact or conduct between mental-health professionals and their clients.* Legislative Service Commission Bill Analysis of S.B. No. 9, as Introduced, 124th General Assembly. During the legislative debate, however, there were concerns about singling out one profession from the myriad of professions that serve vulnerable clients and about penalizing all consensual sexual activity between professionals and their clients regardless of the client's mental state*... A much more limited version of the bill ultimately became R.C. 2907.03(A)(10), which requires an affirmative unconscionable act by the mental-health professional in addition to the existence of the professional relationship with the client.* Am.Sub.S.B. No. 9, 149 Ohio Laws, Part I, 1247.

*State v. Mole,* 149 Ohio St.3d 215, 2016-Ohio-5124, 74 N.E.3d 268, ¶38 (emphasis added; citations omitted).

{¶24} In the case at bar, we find that based upon the record before us, a reasonable juror—believing the state's evidence and drawing all reasonable inferences in the state's favor—could not find beyond a reasonable doubt that Sohar induced M.M. to submit to sexual conduct by falsely representing to M.M. that the sexual conduct was necessary for mental health treatment purposes.

{¶25} There is no evidence in the case at bar that Sohar falsely representing to M.M. that sexual conduct was necessary for mental health treatment purposes. Sohar expressly denied that he ever told M.M. that sexual conduct was necessary for M.M.'s treatment. 3T. at 204; 210; 217-218. Sohar denied that any sexual conduct had occurred between him and M.M.

{¶26} M.M. did not claim that that Sohar told her that sexual conduct was necessary for treatment purposes. M.M. never testified that she allowed sexual conduct to occur because Sohar manipulated her into believing it was somehow therapeutic.

{¶27} M.M. testified that she first brought up the subject that she liked Sohar romantically. 2T. at 200. The talk of romance occurred before any sexual conduct had occurred. M.M. characterized her phone conversations with Sohar as normal conversations and not therapy. 2T. at 211. M.M. further testified that Sohar was demeaning when he and M.M. would talk about his wife. Sohar would tell M.M. that she was younger and prettier than his wife. 2T. at 215. M.M. testified to texting conversations where she told Sohar that she was not risking anything; however, Sohar had everything to lose, such as his job, his life, and his wife. 2T. at 222. Sohar would tell M.M. that she was beautiful and that she was worth it. 2T. at 225. M.M. testified that during the time Sohar had put his fingers inside her vagina he did not say anything. 2T. at 208.

{¶28} Sexual activity between a counselor and a patient, notwithstanding the existence of a counselor-patient relationship, without more, does not give rise to a criminal responsibility. In order to be a crime the evidence must prove beyond a reasonable doubt that the counselor induced the patient to enter into sexual relations on the pretext that it was a necessary part of the treatment for which the patient has sought out the counselor.

In the case at bar, M.M. never claimed, and there is no other evidence in the record that *M.M. was induced by Sohar to engage in sexual conduct with Sohar in furtherance of her treatment.* He did not pressure her into submitting to the sexual conduct by telling her that it was necessary for treatment purposes, and M.M. never claimed that she engaged in sexual conduct with Sohar under the belief it was a part of her treatment.

{¶29} We agree that a mental health professional need not expressly inform a client that sexual conduct is a necessary part of the treatment in order to satisfy the requirement of R.C. 2907.03(A)(10). However in the case at bar, there is a complete lack of evidence that Sohar was engaging M.M. in sexual conduct *as a part of her treatment.* The legislature could have outlawed *all* sexual conduct between mental health professionals and clients or patients. It did not. It imposed a specific, narrowly tailored and explicit requirement in order to find a mental health professional's conduct to be criminal conduct.

{¶30} We do not condone the conduct of Sohar. It is important to note that our conclusion does not mean that Sohar's actions against M.M. did not constitute any criminal offense. For instance, we find it rather likely that the jury would have convicted Sohar of unlawful sexual conduct with a minor if given the chance. R.C. 2907.04 unlawful sexual conduct with a minor provides:

> (A) No person who is eighteen years of age or older shall engage in sexual conduct with another, who is not the spouse of the offender, when the offender knows the other person is thirteen years of age or older but less than sixteen years of age, or the offender is reckless in that regard.

* * *

(3) Except as otherwise provided in division (B)(4) of this section, if the offender is ten or more years older than the other person, unlawful sexual conduct with a minor is a felony of the third degree.

{¶31} It would not be difficult for the state to have proven that Sohar was ten or more years older than fourteen year old M.M. But the fact remains that the jury did not find him guilty of this offense. Instead, it found him guilty of sexual battery. The evidence is insufficient to support this conviction, thus Sohar's conviction for sexual battery must be vacated.

{¶32} Sohar's First Assignment of Error is sustained. In light of our disposition of Sohar's First Assignment of Error, we find Sohar's Second and Third Assignments of Error are moot.

{¶33} The judgment of the Stark County Court of Common pleas is reversed. Sohar's conviction for sexual battery in violation of R.C. 2097.03(A)(10) is vacated and this case is remanded to the trial court for further proceedings consistent with this Opinion.

By Gwin, J.,

Baldwin, P.J., and

Delaney, J., concur