[Cite as *State v. Russell*, 2025-Ohio-813.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| STATE OF OHIO,<br><br>    Plaintiff-Appellee,<br><br>- vs -<br><br>RAHVION Q. RUSSELL,<br><br>    Defendant-Appellant. | CASE NO. 2024-P-0018<br><br>Criminal Appeal from the<br>Court of Common Pleas<br><br>Trial Court No. 2023 CR 00038 |

**O P I N I O N**

Decided: March 10, 2025
Judgment: Affirmed

*Connie J. Lewandowski*, Portage County Prosecutor, and *Kristina K. Reilly*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Sean P. Martin*, 113 North Chestnut Street, Suite A, Jefferson, OH 44047 (For Defendant-Appellant).

JOHN J. EKLUND, J.

{¶1} Appellant, Rahvion Q. Russell, appeals the judgment of conviction from the Portage County Court of Common Pleas after a jury trial where he was found guilty of Felonious Assault, a first-degree felony in violation of R.C. 2903.11, with a firearm specification; Discharge of a Firearm On or Near Prohibited Premises, a third-degree felony in violation of R.C. 2923.162, with a firearm specification; two counts of Improperly Handling Firearms in a Motor Vehicle, fourth-degree felonies in violation of R.C. 2923.16; and Obstructing Official Business, a fifth-degree felony in violation of R.C. 2921.31.

{¶2} Appellant has raised one assignment of error arguing that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence.

{¶3} Having reviewed the record and the applicable caselaw, we find Appellant's assignment of error to be without merit. Appellant's convictions and the accompanying firearm specifications were supported by sufficient evidence and were not against the manifest weight of the evidence.

{¶4} Therefore, the judgment of the Portage County Court of Common Pleas is affirmed.

## Substantive and Procedural History

{¶5} Appellant was initially charged in the Portage County Juvenile Court. On January 9, 2023, the juvenile court transferred jurisdiction to the Portage County Court of Common Pleas to present the case to the Portage County Grand Jury. On January 19, 2023, the grand jury indicted Appellant on the following counts: Count One: Felonious Assault, a first-degree felony in violation of R.C. 2903.11, with two firearm specifications both pursuant to R.C. 2929.14(D) and 2941.1412; Count Two: Discharge of a Firearm Upon or Over a Public Road or Highway, a third-degree felony in violation of R.C. 2923.162, with a firearm specification pursuant to R.C. 2929.14(D) and 2941.145; Counts Three and Four: Improperly Handling Firearms in a Motor Vehicle, fourth-degree felonies in violation of R.C. 2923.16; Counts Five and Six: Receiving Stolen Property, fourth-degree felonies in violation of R.C. 2913.51; and Count Seven: Obstructing Official Business, a fifth-degree felony in violation of R.C. 2921.31.

2

{¶6}  Appellant pled not guilty, and the matter proceeded to trial on February 20, 2024. The following facts and evidence were adduced at trial:

{¶7}  The State called Christian Freeman, who testified that his 2015 Dodge Charger was stolen on May 27, 2022. Freeman said that there was a Ruger 9-millimeter handgun in the car. Although he could not remember if it was loaded, he said, "the clip was loaded. I'm not sure if it was inside of the gun." He said that both were in the glovebox or center console of the car.

{¶8}  Officer Theresa Campbell, of the Walton Hills Police Department, testified that on July 2, 2022, she was working the four p.m. to four a.m. shift. She said that in the early hours of the morning, she got a call for mutual aid from the Oakwood Police Department to assist Ohio State Troopers who had been shot at during a pursuit. The report she received from dispatch stated that the occupants of the vehicle had fled on foot and to be on the lookout for two male subjects in all black. She positioned her cruiser in a parking lot near their reported location and blacked out her lights to avoid detection. She soon saw Appellant wearing all black, including a black mask, running across the street. She ordered the man to stop and placed him under arrest. She noted that he was "panting heavily." Appellant was not carrying a firearm when Officer Campbell arrested him. The State introduced the audio/visual recording of Officer Campbell's body camera.

{¶9}  Trooper Tyler Totani, of the Ohio State Highway Patrol, testified that he was on duty on July 2, 2022, and encountered a blue Dodge Charger around 2:30 a.m. He was patrolling Route 14 and saw a Portage County Sheriff's cruiser at the intersection. He noticed the Dodge Charger pull into a parking lot, perform a U-turn, and then continue down the same direction. It appeared to Trooper Totani that the car was trying to avoid

3

the Sheriff Deputy's cruiser, and he began to observe it. He noticed the car had no license plates. Trooper Totani got behind the car and turned on his lights and siren. The driver of the car began to flee, and Trooper Totani began a pursuit on Route 14.

{¶10} Another highway patrol unit used a Stop Stick to deflate the car's tires, but the driver continued to flee with deflated tires. The pursuit continued onto Northbound Interstate 480. Trooper Totani then observed an object "come out of the passenger side of the vehicle . . . . [I]t was flashes essentially. And at first I couldn't figure out what it was until I heard the rapport of the gunshots, the muzzle flashes. Immediately I heard the pop, pop, muzzle flashes that followed that." He said that this happened a second time and he backed off the distance of the pursuit for his own safety.

{¶11} Shortly after Trooper Totani backed off from the pursuit, the Charger went around a bend in the road, struck a vehicle, then crashed into a guardrail on the left shoulder, blocking the driver's-side door. Trooper Totani approached the crash and stopped his cruiser behind the Charger. He saw a passenger fleeing westbound and saw the driver exiting the vehicle from the passenger door and follow the passenger. He stated that he never completely lost visual contact with the vehicle and was 100 percent sure that only two people were in the car. He testified that he approached the car after it crashed soon enough that no other potential occupants could have gotten out without him seeing them. Finally, he said that there were gas cans on the floorboard of the back seat, and the seats would not have likely been occupied. He said both occupants were dressed in all black, wearing black ski masks.

{¶12} Sometime later, Trooper Totani was notified that Appellant had been apprehended and was in the hospital. He made contact with him, got his identity, and

4

asked several questions about his involvement in the pursuit and shooting. However, Trooper Totani discovered that Appellant was under 18 and discontinued any questioning until a guardian came to the hospital.

{¶13} With Appellant's aunt present, he Mirandized Appellant and took a statement. Appellant admitted to being the front seat passenger in the vehicle. When asked why the shots were fired, Appellant said it was to get the police to stop chasing them. He denied knowing what kind of gun it was and stated that he did not know what a Glock looked like.

{¶14} Trooper Totani said that Appellant had a head and knee injury. He said that the passenger side of the windshield had spidering, indicating that Appellant's head had impacted the windshield. Finally, Trooper Totani said that no gun was ever recovered but was not surprised by this because the occupants fled into an industrial area across the interstate where there were many locations to dispose of the weapon. The State introduced audio/visual footage of Trooper Totani's cruiser dash camera and body camera.

{¶15} Sergeant Chris Conway, of the Ohio State Highway Patrol, testified about his involvement in the pursuit. He said that after the crash, the car was processed for evidence, including gunshot residue. In the morning, he began a search for any bullet casings near the location of the suspected gunshots. He found one 9-millimeter casing underneath a bridge in a location near to where gunshots emanated from the car. He said the casing did not appear weathered.

{¶16} Trooper Michael Royko, of the Ohio State Highway Patrol, testified that he is assigned to the Criminal Investigations Office. He said that he processed the Dodge

5

Charger for evidence. He used four kits to test for the presence of gunshot residue. Sample one was the front passenger side of the vehicle, sample two was the right front passenger seat, sample three was the A-pillar in the right front passenger compartment, and sample four was the roof of the right front passenger compartment. Trooper Royko also recovered a blue iPhone and another cellphone. Trooper Royko was able to obtain the passcode for the blue iPhone, and after a data extraction was performed, Appellant was identified as the owner of the phone. This phone had initially been located on the passenger floorboard but was apparently moved during the search of the vehicle. Appellant's cellphone contained a picture of him holding a Glock handgun taken one month prior to his arrest. Appellant's phone also revealed 166 internet searches for the word "Glock" and 55 searches for the words "Dodge Charger."

{¶17} Michelle Snyder, a forensic scientist at the Ohio Bureau of Investigation (BCI), testified that she specializes in gunshot residue analysis. She analyzed samples taken from the Dodge Charger and concluded that the "Item 4" sample was positive for gunshot residue. She ruled out other residue sources, such as brake lining, fireworks, and airbag deployment residue.

{¶18} Keith Ferguson, a forensic specialist with the Ohio State Highway Patrol, testified that he extracted the data from the blue iPhone recovered in the Dodge Charger because he obtained the passcode for the phone from Trooper Royko. He was only able to extract limited data from the other recovered cellphone.

{¶19} The State rested its case, and Appellant did not offer any witnesses.

{¶20} The jury returned a guilty verdict on Felonious Assault and the firearm specifications, Discharge of a Firearm On or Near Prohibited Premises with firearm

6

specification, both counts of Improperly Handling Firearms in a Motor Vehicle, and Obstructing Official Business. The jury found Appellant not guilty on both counts of Receiving Stolen Property.

{¶21} On February 27, 2024, the trial court sentenced Appellant to an indefinite prison term of 10-15 years on Count One, and a consecutive seven-year prison term for the second firearm specification for discharging the firearm at a police officer while committing the offense; a concurrent 36-month prison sentence on Count Two, with a consecutive three-year prison sentence for the firearm specification for brandishing, displaying, or using the firearm during the commission of the offense; a concurrent prison sentence of 18 months on both Counts Three and Four; and a consecutive 12-month prison sentence on Count Seven, for an aggregate total of 21 to 26 years in prison.

{¶22} Appellant timely appealed raising one assignment of error.

**Assignment of Error and Analysis**

{¶23} Appellant's sole assignment of error states: "The Appellant's Conviction Was Legally Insufficient and Against the Manifest Weight."

{¶24} "'"[S]ufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, 1997-Ohio-52, ¶ 23, quoing *Black's Law Dictionary* (6th Ed. 1990). The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

7

Case No. 2024-P-0018

{¶25} When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *State v. Richardson*, 2016-Ohio-8448, ¶ 13. This naturally entails a review of the elements of the charged offense and a review of the State's evidence. *Id.*

{¶26} When evaluating the weight of the evidence, we review whether the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other indicated clearly that the party having the burden of proof was entitled to a verdict in its favor, if, on weighing the evidence in their minds, the greater amount of credible evidence sustained the issue which is to be established before them. "Weight is not a question of mathematics but depends on its effect in inducing belief." (Emphasis deleted.) *Thompkins* at ¶ 24. Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates the evidence's persuasiveness. *Id.*

{¶27} The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 2021-Ohio-4258, ¶ 22 (11th Dist.); *State v. Antill*, 176 Ohio St. 61, 67 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, in the outcome of the case, and the connection with the prosecution or the defendant. *Landingham* at ¶ 22. This Court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the factfinder. *State v. Brown*, 2003-Ohio-7183, ¶ 52 (11th Dist.). The reviewing court "determines whether . . . the jury clearly lost its way and created such a

8

manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983).

**{¶28}** A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 2013-Ohio-1842, ¶ 32 (11th Dist.).

**{¶29}** Appellant argues that his convictions on Counts 1, 2, 3, and 4 are not based on sufficient evidence and are against the manifest weight of the evidence. He does not appear to assert any argument pertaining to his conviction for Obstructing Official Business, Count 7.

**{¶30}** R.C. 2903.11(A)(2) provides that no person shall knowingly "[c]ause or attempt to cause physical harm to another . . . by means of a deadly weapon . . . ." R.C. 2923.11(A) provides that a "'deadly weapon' means any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon."

**{¶31}** R.C. 2923.162(A)(3) prohibits any person from discharging a firearm "upon or over a public road or highway." According to division (C)(2), if the violation created a substantial risk of physical harm to persons or property, the violation is a third-degree felony.

**{¶32}** R.C. 2923.16(A) provides that "[n]o person shall knowingly discharge a firearm while in or on a motor vehicle." Division (B) provides that "[n]o person shall

9

knowingly transport or have a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle."

**{¶33}** The jury found Appellant guilty on two firearm specifications. The first was a seven-year firearm specification as provided in R.C. 2941.1412(A), which requires a finding "that the offender discharged a firearm at a peace officer or a corrections officer while committing the offense." The second was a three-year firearm specification as provided in R.C. 2941.145(A), which requires a finding "that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."

**{¶34}** Appellant argues his convictions are not supported by sufficient evidence and are against the manifest weight of the evidence because the testimony and video evidence did not support the conclusion that Appellant possessed a firearm, was unclear about how many occupants were in the Dodge Charger, and was unclear as to which passenger in the vehicle was firing at Trooper Totani. Appellant argues that Trooper Totani's testimony that there were only two occupants in the vehicle was not reliable because in the moments before the Dodge Charger crashed and the occupants fled, Trooper Totani had backed off from the pursuit due to the gunfire, and the Dodge Charger had just gone around a bend. Further, Trooper Totani was in a high stress situation engaged in the pursuit, navigating through wreckage from the innocent victim, and that all of this occurred at night, making it difficult to discern what actually happened.

**{¶35}** There is no real question that someone in the Dodge Charger fired several gunshots out of the car during the pursuit and then fled after the car crashed. In other

10

words, the evidence supported the conclusion that someone fired a gun at Trooper Totani while the vehicle was on the highway, that someone improperly handled the gun in the vehicle, and that someone fled on foot after the crash. The only real issue Appellant raises is that the evidence did not support convicting him as the person who did those things.

{¶36} However, Appellant's summary of the evidence against him overlooks the substantial amount of corroborating evidence that supported his convictions. For example, there is also no real question that Appellant was in the front passenger seat of the vehicle. Trooper Totani interviewed Appellant after he was arrested, and Appellant admitted to being in the front right passenger seat of the car, and his phone was found in the car. The positive gunshot residue test for the roof of the right front passenger compartment supports the conclusion that the gun was fired from where Appellant admitted he was seated in the car. Further, the gas cans in the back floorboard supported Trooper Totani's testimony that there were only two occupants in the Dodge Charger.

{¶37} The jury was free to either believe or disbelieve Appellant's trial theory that there was an additional person in the car who fired the gun. The jury chose to convict Appellant. In convicting Appellant and rejecting his theory that another individual was the one who fired the gun, the jury did not clearly lose its way, and each of Appellant's convictions was supported by the manifest weight of the evidence.

{¶38} Accordingly, Appellant's sole assignment of error is without merit.

Case No. 2024-P-0018

{¶39} For the foregoing reasons, the judgment of the Portage County Court of Common Pleas is affirmed.


EUGENE A. LUCCI, J.,

SCOTT LYNCH, J.,

concur.

12

Case No. 2024-P-0018